823 F.2d 1538
 3 U.S.P.Q.2d 1412
 AMSTAR CORPORATION and Enviro-Clear Company, Inc.,
Appellants/Cross-Appellees,
v.
ENVIROTECH CORPORATION and Energy Fuels Nuclear, Inc.,
Appellees/Cross- Appellants.
 Appeal Nos. 86-1340, 86-1360.
 United States Court of Appeals,
Federal Circuit.
 July 7, 1987.
 
 Gerald W. Griffin, Cooper, Dunham, Griffin & Moran, New York City, argued for appellants/cross-appellees. With him on the brief was Norman H. Zivin. Also on the brief were Donald B. Holbrook and Calvin L. Rampton, Jones, Waldo, Holbrook & McDonough, of Salt Lake City, Utah.
 Gordon L. Roberts, Parsons, Behle & Latimer, of Salt Lake City, Utah, argued for appellees/cross-appellants. With him on the brief were Raymond J. Etcheverry and David G. Mangum.
 Joseph F. Nakamura, Sol., Fred E. McKelvey, Deputy Sol. and John W. Dewhirst, Associate Sol., Office of the Sol., of Arlington, Va., were on the brief for amicus curiae, Com'r of Patents and Trademarks.
 Before MARKEY, Chief Judge, FRIEDMAN and DAVIS, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Appeal and cross-appeal from a judgment of the United States District Court for the District of Utah, No. C-79-0023-J, awarding Amstar Corporation and its exclusive U.S. licensee Enviro-Clear Company, Inc. (collectively Amstar) $4,801,869 in damages for patent infringement, but denying damages on certain transactions, refusing to find willful infringement, and denying Amstar increased damages, attorney fees, and costs.
 
 
 2
 In Appeal No. 86-1340, Amstar appeals from orders: (1) refusing to consider evidence of the diminished value of a portion of Amstar's business; (2) refusing to enjoin Energy Fuels Nuclear, Inc. (EFN) from infringing Amstar's U.S. Patent No. 3,523,889 (Eis patent); (3) denying Amstar's motion to hold Envirotech Corporation (Envirotech) in contempt and to enjoin it from selling certain allegedly infringing devices; and (4) denying Amstar's motion to enjoin Envirotech from proceeding with a request for reexamination of the Eis patent.
 
 
 3
 In Appeal No. 86-1360, Envirotech and EFN appeal from an order denying their motion under Fed.R.Civ.P. 60(b) to set aside the district court's May 3, 1983 judgment that they had not established invalidity or unenforceability of Claims 1-10 of the Eis patent.
 
 
 4
 On June 2, 1987, the Patent and Trademark Office (PTO) issued a reexamination certificate confirming claims 1 through 11 of the Eis patent. Accordingly, Amstar's appeal from the denial of its motion to enjoin Envirotech from proceeding with its request for reexamination is dismissed as moot. We affirm the judgment in all other respects.
 
 BACKGROUND
 I. Proceedings Leading to This Appeal
 
 5
 On January 10, 1979, Amstar sued Envirotech and EFN for infringement of claims 1-10 of the Eis patent. Envirotech and EFN counterclaimed that the Eis patent was invalid under 35 U.S.C. Sec. 103 and unenforceable for failure to disclose certain prior art to the PTO. After a bench trial, the district court issued its May 3, 1983 judgment upholding the Eis patent as valid and enforceable, but finding it not infringed.
 
 
 6
 Amstar appealed from the judgment of noninfringement. Envirotech and EFN did not appeal. On March 27, 1984, this court reversed the judgment of noninfringement and remanded "for consideration of an injunction against further infringement by Envirotech and for an accounting of damages 'adequate to compensate' Amstar for infringement [under] 35 U.S.C. Sec. 284." Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1486, 221 U.S.P.Q. 649, 657 (Fed.Cir.), cert. denied, 469 U.S. 924, 105 S.Ct. 306, 83 L.Ed.2d 240 (1984).
 
 
 7
 After the trial, but before this court rendered its judgment on the appeal, Envirotech produced and sold a "modified" device.
 
 
 8
 The district court issued a December 20, 1984 order enjoining Envirotech from infringing claims 1-10 of the Eis patent, but specifically exempting EFN from the injunction.
 
 
 9
 Discovery proceeded on damages. On March 27, 1985, Envirotech and EFN moved under Fed.R.Civ.P. 60(b) to set aside the district court's May 3, 1983 judgment of validity, citing newly discovered prior art. At the same time, citing the same prior art, Envirotech filed a request for reexamination of the Eis patent in the PTO. Amstar moved on July 1, 1985 to enjoin Envirotech from proceeding with its reexamination request and to cite it for contempt. The PTO agreed not to proceed with the reexamination until after the district court ruled on Envirotech's Rule 60(b) motion. On January 3, 1986, the district court orally denied all motions, issuing written orders on May 15, 1986. The order refusing to enjoin Envirotech from proceeding with the reexamination request appears at 231 USPQ 320. On April 18, 1986, the PTO ordered that the reexamination proceeding be resumed. In re Eis, 1 U.S.P.Q.2d 1418 (Comm'r Pat. & Trademarks 1986).
 
 
 10
 After this court reversed the judgment of noninfringement, Envirotech produced a "redesigned" device and began offering it for sale. On November 26, 1985, Amstar moved to enjoin the production and sale of the new design and to cite Envirotech for contempt. The district court orally denied the motion on January 3, 1986, and issued a written order on May 15, 1986.
 
 
 11
 Between January 6 and 21, 1986, the district court conducted a trial on damages. On April 30, 1986, the court awarded $4,801,869 to Amstar, including $2,467,486 in prejudgment interest, plus interest accrued from January 1, 1986 to the date of final judgment. Saying the award is not "adequate to compensate" it under 35 U.S.C. Sec. 284, Amstar appeals to this court once again.
 
 II. The Invention
 
 12
 The Eis patent discloses a method and apparatus for separating liquids from solids. One step in many industrial processes is separating mixtures of water and fine particles into their liquid and solid components. Older methods rely mostly on gravity: water-solid mixtures stand in large settling tanks and the particles gradually fall to the bottom. Chemicals have occasionally been added to make the particles stick together and fall faster. Dense sludge flows from the bottom of the tank, and clarified liquid flows out the top. The equipment is called a "thickener" or a "clarifier" depending on whether its user wants the solids or the liquid.
 
 
 13
 In its unappealed May 3, 1983 judgment upholding validity, the district court found that the Eis method departs from the prior art by pumping fresh water-solid slurry directly into the dense sludge layer at the bottom of the tank instead of into the top. "Of particular significance," said the court, is a flat baffle plate just beyond the mouth of the inlet tube that deflects the incoming slurry and spreads it out horizontally through the sludge. Added chemicals make the inflowing particles stick to those already in the sludge, while clarified liquid rises up from the sludge layer. The district court found that the Eis method works faster than older methods and requires less bulky equipment.III. The District Court's April 30, 1986 Opinion
 
 
 14
 In an unreported 47-page April 30, 1986 opinion issued after the damages trial, the district court set forth a detailed and thoughtful analysis of the damage Amstar suffered, awarding Amstar lost profits for some transactions, a reasonable royalty for others, and no damages for the rest.
 
 
 15
 Finding that the thickener market "defies a blanket characterization," and is not everywhere a two-supplier market, the court held that Amstar had the burden to show, in each transaction alleged as harmful, some infringing activity that caused its profits to diminish. For each transaction, the court individually analyzed the market situation to determine whether Amstar was entitled to damages and if so, whether to award lost profits or a reasonable royalty.
 
 
 16
 Among the transactions for which damages were not awarded were Envirotech's sales of five modified devices sold after the liability trial, but before this court's March 27, 1984 judgment, and its sales to foreign buyers. Respecting the former, the district court concluded that Amstar failed to carry its burden of proving infringement under the doctrine of equivalents. Respecting the latter, the court ruled that, under Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273, 173 U.S.P.Q. 769 (1972), Amstar was not entitled to damages.
 
 
 17
 Saying the evidence reflected equal support for findings of willful infringement and an effort to work around the Eis patent, the court found that Envirotech's position was not taken in bad faith and refused to increase damages under 35 U.S.C. Sec. 284.
 
 
 18
 The district court declined to award Amstar either attorney fees or costs, saying, "neither side is blameless for perhaps unnecessarily protracting the proceedings."
 
 ISSUES
 
 19
 (1) Whether the district court erred in awarding Amstar $4,801,869 in damages.
 
 
 20
 (2) Whether the district court erred in denying Amstar's motion to hold Envirotech in contempt.
 
 
 21
 (3) Whether the district court abused its discretion in refusing to enjoin EFN.
 
 
 22
 (4) Whether Amstar's appeal from the order refusing to enjoin Envirotech from proceeding with a request for reexamination is moot.
 
 
 23
 (5) Whether the district court erred in denying Envirotech's motion under Fed.R.Civ.P. 60(b).
 
 OPINION
 I. Damages Judgment
 A. Standard of Review
 
 24
 To prevail on its appeal from the damages judgment, Amstar must convince this court that the district court's decision is based on an erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion. TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 898, 229 U.S.P.Q. 525, 526 (Fed.Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986); see Yarway Corp. v. Eur-Control USA, Inc., 775 F.2d 268, 275, 227 U.S.P.Q. 352, 357 (Fed.Cir.1985).
 
 B. Lost Profits
 1. Diminished Value of Business
 
 25
 Amstar says it sought to recover lost profits based on three factors: "sales lost entirely, reduced profits on sales actually made, and lost growth of [Amstar's] business during the period of [Envirotech's] infringement." In determining damages, the district court considered only the first two factors. At a hearing on December 12, 1985, the court told the parties that "the question of diminished value of the business that lost the profits, as I view the pleadings and as I view the whole history of this particular operation, is simply not before me and will not be considered by me if we get to that point."
 
 
 26
 Amstar says the district court committed legal error in refusing to include in its award the lost value of Amstar's business. The court based its refusal not on a legal determination, however, but on a factual determination that the issue had not been raised "within the history of this case." Amstar has cited nothing in the record showing that factual determination to be clearly erroneous. We cannot say, therefore, that the district court abused its discretion in not considering evidence of the lost value of Amstar's business.
 
 2. Two-Supplier Market
 
 27
 A patentee may recover lost profits by proving that but for the infringement, the patentee would have made the sales the infringer made, charged higher prices, or incurred lower expenses. Lam, Inc. v. Johns-Manville Corp., 718 F.2d 1056, 1065, 219 U.S.P.Q. 670, 675 (Fed.Cir.1983). Otherwise the patentee may recover only a reasonable royalty. Milgo Elec. Corp. v. United Business Communications, Inc., 623 F.2d 645, 663, 206 U.S.P.Q. 481, 495 (10th Cir.), cert. denied, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980); see Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078, 219 U.S.P.Q. 679, 681-82 (Fed.Cir.1983). In a market with only two viable competitors, one may infer that the patentee would have made the infringer's sales or charged higher prices but for the infringing competition. Lam, 718 F.2d at 1065, 219 U.S.P.Q. at 675; Milgo Elec. Corp., 623 F.2d at 664, 206 U.S.P.Q. at 496.
 
 
 28
 The district court individually analyzed 37 transactions in which Amstar alleged Envirotech had caused it harm, finding in 17 that but for Envirotech's infringing competition, Amstar would have made Envirotech's sales or charged higher prices. In three, the court said Amstar failed to prove a two-supplier market, and awarded a reasonable royalty. In respect of 17 transactions, the court awarded no damages.
 
 
 29
 Amstar says the district court's failure to find a two-supplier market for all 37 transactions is clearly erroneous, arguing that the relevant market was that for "high-capacity thickeners", and, because they were the only manufacturers of high-capacity thickeners, Amstar and Envirotech were the only viable competitors in the market.
 
 
 30
 Amstar simply ignores the ample evidence supporting the district court's findings that thickeners other than high-capacity thickeners were viable options in some of the transactions at issue, that Envirotech's thickeners were not viable options in others, and that the thickener market "defies a blanket characterization." The court said:
 
 
 31
 The feasibility of any given unit for any particular job varies depending on the design and process limitations set forth in the [customer's] specifications.... Thus, depending on the customer's specific needs, any given job may involve only a single source or any number of viable competitors.
 
 
 32
 As is far too commonplace, Amstar improperly asks this court to evaluate the evidence and find the facts de novo. It cannot, by citing only evidence favorable to it, create in us a definite and firm conviction that a mistake has been committed. Hence we cannot view the court's findings on any of the transactions as clearly erroneous. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 
 3. Changed Bid Specifications
 
 33
 In one transaction for which the court awarded Amstar lost profits, it deducted from the award what Envirotech deducted for the lower cost of cheaper wood tanks ordered by the customer. Amstar says that finding is clearly erroneous because it "never sold lower-cost wood tanks to anyone and there was no reason for it to do so in this situation." Because no evidence supports Amstar's assertion, we uphold the district court's finding.
 
 
 34
 4. Transactions Where Envirotech Did Not Compete
 
 
 35
 In 12 of the 17 transactions for which the district court awarded no damages, it found that Envirotech did not bid, bid only a noninfringing unit, or dropped out of the competition, and that Amstar thus failed to show infringing activity entitling it to recover damages in those transactions. In a thirteenth transaction, where Amstar sold two units at a reduced price, the district court awarded lost profits for only one unit because it found that Envirotech did not bid to supply the other.
 
 
 36
 Amstar says it made those 13 sales at reduced prices because of "the infringing presence of Envirotech in the marketplace," and intimates that customers used "the threat of a lower Envirotech price" as a "bargaining wedge". Nowhere does Amstar cite anything in the record suggesting that any customer in those 13 transactions actually did so, however. "One who fails to submit evidence in support of a position cannot be heard on appeal to complain that the trial court failed to find facts upholding that position." Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1519, 220 U.S.P.Q. 929, 941 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). That principle applies here. The district court properly awarded no damages for the 13 sales at issue because of lack of proof.
 
 5. Unusual Features
 
 37
 In one transaction, Amstar said "unusual features" increased the price, but the district court said Amstar made no showing of what those features were and awarded no damages. Amstar says, "The 'features' clearly are shown in the purchase order.... The Court simply overlooked the documentary evidence."
 
 The record reveals this exchange:
 
 38
 THE COURT: Does your purchase order show an add-on of some kind?
 
 
 39
 [COUNSEL FOR AMSTAR]: I can't answer that right off the top of my head.
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 [COUNSEL FOR AMSTAR]: I can't point to exactly where it is.
 
 
 43
 THE COURT: Well, why don't we do this on this, absent some specific showing, let's use the list [price] as a base and go from there.
 
 
 44
 Amstar points to nothing in the record showing that it ever answered the court's question. We cannot conclude that the trial judge "overlooked" evidence that Amstar failed to show him. "An appeal is not a means for counsel to cure mistakes and omissions made at trial." Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1108, 231 U.S.P.Q. 185, 190 (Fed.Cir.1986).
 
 
 45
 C. Infringement by Post-Trial Modified Envirotech Devices
 
 
 46
 The independent claims of the Eis patent are set forth in this court's earlier opinion, 730 F.2d at 1479-80, 221 U.S.P.Q. at 651-52. Important for this appeal is this limitation in apparatus claim 9:
 
 
 47
 [U]nitary substantially horizontal baffle means adjacent the point of entry established by said conduit means for arresting and altering the direction of motion of said influent feed whereby the influent feed is directed in a horizontally outward direction with respect to said centralized point of entry.
 
 
 48
 Method claims 1 and 8 contain similar limitations.
 
 
 49
 Envirotech devices found to constitute infringements in our earlier opinion had a rotating disc inside the slurry inlet tube, or feedwell, flush with its mouth or up to five inches back from it. This court concluded, "substitution of a rotating disc for the baffle of claim 9 [could not] escape infringement, the two being equivalent and the substitution bearing no relation to claims 1 and 8." 730 F.2d at 1482, 221 U.S.P.Q. at 653.
 
 
 50
 Five Envirotech devices, modified after the liability trial but before this court's March 27, 1984 judgment, located the rotating disc rearwardly in the feedwell from one to 2.5 feet from its mouth. Amstar asserts infringement by those five modified devices under the doctrine of equivalents.
 
 
 51
 In its opinion, the district court noted first that Amstar introduced no evidence on whether the modified devices achieved the same result as that achieved by the claimed invention. Second, the court noted the competing expert testimony on whether the accused devices performed substantially the same function in substantially the same way as the claimed device. The court stressed that Amstar offered no tests or data, saying that its expert's testimony on how the accused devices met the above-quoted limitation "appeared to be largely speculative," and that, "[i]n the absence of tests and data, a conclusion of infringement by this Court would be equally speculative."
 
 1. Burden of Proof
 
 52
 Amstar argues first that the district court wrongly assessed the burden of proof. During an accounting, says Amstar, a patentee alleging infringement by a modified device has a lower burden of proof and need show only similarity between the adjudicated infringing device and the modified device.
 
 
 53
 During an accounting, as during the liability trial, a patentee must prove infringement by a preponderance of the evidence. See Bene v. Jeantet, 129 U.S. 683, 688, 9 S.Ct. 428, 430, 32 L.Ed. 803 (1889); Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 758, 221 U.S.P.Q. 473, 477 (Fed.Cir.1984). It has been indicated that infringement may be determined by comparison with a device adjudicated as an infringement. One of our predecessor courts, adopting the wording of Flat Slab Patents Co. v. Turner, 285 F. 257, 272-73 (8th Cir.1922), held that the question during an accounting is whether a newly accused item is within what the court has declared an infringement, i.e., whether the new item has elements "similar" to the infringing elements of the adjudicated infringing items. Decca Ltd. v. United States, 225 Ct.Cl. 326, 640 F.2d 1156, 1168-69, 209 U.S.P.Q. 52, 61 (1980), cert. denied, 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981) ("[T]he court limits its inquiry to the issue of whether the article is similar in structure and in mode of operation to the items found to infringe in the liability phase."); Pitcairn v. United States, 212 Ct.Cl. 168, 547 F.2d 1106, 1114, 192 U.S.P.Q. 612, 615 (1976) (per curiam), cert. denied, 434 U.S. 1051, 98 S.Ct. 903, 54 L.Ed.2d 804 (1978); Fauber v. United States, 112 Ct.Cl. 302, 81 F.Supp. 218, 220, 79 U.S.P.Q. 410, 418 (1948), cert. denied, 337 U.S. 906, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949); Marconi Wireless Tel. Co. v. United States, 99 Ct.Cl. 1, 66, 53 U.S.P.Q. 246, 258 (1942) (The question is "one of comparison between [the new] construction and the one declared to infringe."), rev'd in part, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731, 99 Ct.Cl. 815, 57 U.S.P.Q. 471 (1943).
 
 
 54
 In the sense that things equal to the same thing are equal to each other, the quoted language from opinions in the foregoing cases may be applicable to cases in which the adjudicated device is a precise literal infringement of the claims. In such cases, comparison with the adjudicated device may have served as a handy method of reaching a determination. However, whether one is determining infringement at trial, in an accounting, or in a contempt proceeding, it must be remembered that it is a claim that is infringed and a claimed invention that is patented. Thus comparison with an adjudicated device cannot serve to encompass within the patent's exclusionary scope a device that does not in fact constitute an infringement of the claim, either literally or under the doctrine of equivalents. In KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1528, 227 U.S.P.Q. 676, 681 (Fed.Cir.1985), a contempt proceeding, this court said, "In making a finding that the accused new device is an infringement, the court cannot avoid looking at the claims of the patent."
 
 
 55
 Here, in any event, the district court's comparison of Envirotech's modified devices with the claims of the Eis patent was dictated, for Amstar's expert witness made only that comparison. We do not agree that the district court erred in applying the wrong burden of proof.
 
 2. Credibility Determinations
 
 56
 Amstar also argues that the district court erred in crediting Envirotech's expert instead of Amstar's. Amstar, which bore the burden, introduced no evidence of infringement other than its expert's opinion. When, as here, the evidence consists solely of competing expert opinions, we have no basis for overturning the district court's credibility determinations. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575, 105 S.Ct. 1504, 1512-13, 84 L.Ed.2d 518 (1985); Gyromat Corp. v. Champion Spark Plug Co., 735 F.2d 549, 552, 222 U.S.P.Q. 4, 6 (Fed.Cir.1984); Fed.R.Civ.P. 52(a).
 
 D. Foreign Sales
 
 57
 Amstar argues that the district court erroneously applied Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273, 173 U.S.P.Q. 769 (1972), but does not dispute Envirotech's position that Congress' effective overruling of Deepsouth in 1984, 35 U.S.C. Sec. 271(f), was not retroactive.
 
 
 58
 The district court held that Amstar was not entitled to damages for the foreign transactions, finding that, in the three transactions where Envirotech made the sale, the parts were never operably assembled in the United States. In the other eight transactions, the court found that the parts would not have been assembled if Envirotech had bid successfully. Amstar does not challenge those findings.
 
 
 59
 Instead, Amstar asserts an error of law, saying Deepsouth "is not applicable to a determination of the amount of damages where a U.S. infringer competed in the U.S. for sales against a U.S. patentee," citing Railroad Dynamics, Inc. v. A. Stucki Co., 727 F.2d 1506, 1519, 220 U.S.P.Q. 929, 941 (Fed.Cir.), cert. denied, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984), and Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 561 F.Supp. 512, 217 U.S.P.Q. 1302 (E.D.La.1982), aff'd 761 F.2d 649, 225 U.S.P.Q. 985 (Fed.Cir.1985), cert. denied, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). Those cases do not support Amstar's assertion. In both, assembly into the claimed combination occurred before the infringing items left the United States. That did not happen here. Envirotech's export of the elements before assembly could not have infringed the Eis patent, nor could foreign manufacture and assembly of those elements have done so. Deepsouth, 406 U.S. at 529, 92 S.Ct. at 1707, 173 U.S.P.Q. at 773.
 
 E. Willful Infringement
 
 60
 In its opinion of May 3, 1983, the district court analyzed internal memoranda of Envirotech and made these findings:
 
 
 61
 As Amstar's marketing efforts expanded into the coal and minerals industries, the Enviroclear equipment attracted considerable attention from engineers and technicians at Envirotech. The Envirotech specialists were at first skeptical of Amstar's claims. Great effort was expended in gathering data and direct observations concerning the Enviroclear equipment, particularly in pilot applications at coal and uranium ore mills, and at the Colorado School of Mines. The available information was analyzed in an effort to discern the mechanism by which the Enviro-Clear clarifier/thickener operates, all with an eye toward development of a competing piece of equipment.
 
 
 62
 As above indicated, the court in its April 30, 1986 opinion declined to find willful infringement, referring to the foregoing findings and saying the facts could equally support a finding that Envirotech tried to work around the Eis patent. The court noted that Envirotech admitted it had not sought counsel's opinion until after it had offered for sale its high-capacity thickener, but found that once counsel was informed, Envirotech began talking with Amstar in an apparent good faith attempt to design a noninfringing thickener. The court also found that Envirotech's position "was substantial and not taken in obvious bad faith." Taking into account "all the facts and circumstances" of the case, the court declined to increase damages under 35 U.S.C. Sec. 284.
 
 
 63
 Amstar argues that the district court's finding of no willful infringement is clearly erroneous, and that the district court "abused its discretion in failing to award multiple damages as a consequence of Envirotech's willful and deliberate infringement."
 
 
 64
 Amstar says Envirotech's internal memoranda show that it copied the Eis design. Those memoranda might but need not be so read, however. They could also support a finding that Envirotech desired to learn all about that machine, as one memo said, to "design a more effective machine which will do a better job" with fewer problems, allowing Envirotech to remain competitive in the thickener market. See King Instrument Corp. v. Otari Corp., 767 F.2d 853, 867, 226 U.S.P.Q. 402, 412 (Fed.Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986); State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1234-36, 224 U.S.P.Q. 418, 423-24 (Fed.Cir.1985). We uphold the district court's rejection of Amstar's "copying" argument because, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson, 470 U.S. at 574, 105 S.Ct. at 1512; see Rolls-Royce, 800 F.2d at 1110, 231 U.S.P.Q. at 192.
 
 
 65
 Amstar argues that Envirotech did not receive a timely legal opinion, and so failed to exercise due care to determine whether its activities infringed the Eis patent. Absence of an opinion of counsel does not in every case require a finding of willful infringement, however. Rolls-Royce, 800 F.2d at 1109, 231 U.S.P.Q. at 191; Machinery Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 472, 227 U.S.P.Q. 368, 372 (Fed.Cir.1985). Here, although Envirotech had received its early orders for high-capacity thickeners by the time it received an opinion on the Eis patent, none had yet been installed. Before installation, those thickeners were modified, albeit insufficiently to escape infringement. We cannot conclude that such facts compel us to say the finding of nonwillfulness was clearly erroneous. See Radio Steel & Mfg. Co. v. MTD Products, Inc., 788 F.2d 1554, 1558-59, 229 U.S.P.Q. 431, 434-35 (Fed.Cir.1986).
 
 
 66
 Presenting selected testimony and exhibits out of chronological order, Amstar argues that Envirotech, after receiving counsel's opinion, acted in bad faith and "repeatedly sought to mislead Amstar's lawyers as to the true construction and operation of its Eimco high-capacity thickener." A determination of willful infringement, however, requires reference to the "totality of the circumstances." Central Soya Co. v. George A. Hormel & Co., 723 F.2d 1573, 1577, 220 U.S.P.Q. 490, 492 (Fed.Cir.1983). Amstar simply and improperly ignores testimony and documents that support the district court's finding that Envirotech, after being advised of Amstar's claims of infringement, engaged in a good faith colloquy with Amstar and modified its thickener design in an attempt, albeit unsuccessful, to avoid infringement.
 
 
 67
 Although, as noted in our earlier opinion, 730 F.2d at 1482 n. 5, 221 U.S.P.Q. at 654 n. 5, the record could support a finding of willful infringement, the totality of circumstances in this case does not compel such a finding. Because the "district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not deem clearly erroneous its finding of nonwillfulness. Anderson, 470 U.S. at 574, 105 S.Ct. at 1512; see Rolls-Royce, 800 F.2d at 1110, 231 U.S.P.Q. at 192.
 
 
 68
 Because Amstar has not shown the district court's finding of nonwillfulness to be clearly erroneous, we need not reach the question of whether the district court abused its discretion in declining to award increased damages or costs. Allen Archery, Inc. v. Browning Mfg. Co., 819 F.2d 1087, 1099, 2 U.S.P.Q.2d 1490, 1499 (Fed.Cir.1987); Rolls-Royce, 800 F.2d at 1111, 231 U.S.P.Q. at 192.
 
 F. Exceptional Case
 
 69
 The district court declined to award Amstar its attorney fees under 35 U.S.C. Sec. 285 because Amstar "relie[d] on the same conduct to justify its request for both treble damages and attorneys' fees." Amstar tells us that various activities of Envirotech show this is an exceptional case, including actions that Envirotech took after the district court rendered its judgment. The record shows, however, that Amstar represented to the district court that its "principal ground" for seeking attorney fees under 35 U.S.C. Sec. 285 was "a follow-on to the willful and deliberate infringement argument." Because the district court's finding of no willful infringement is not clearly erroneous, there is no foundation for an award of attorney fees in this case. American Original Corp. v. Jenkins Food Corp., 774 F.2d 459, 466, 227 U.S.P.Q. 299, 303 (Fed.Cir.1985); Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1578-83, 226 U.S.P.Q. 821, 824 (Fed.Cir.1985).
 
 II. Denial of Amstar's Contempt Motion
 
 70
 Envirotech leased a redesigned unit to U.S. Borax from April to July 1985, after the district court's December 20, 1984 order enjoining Envirotech from infringement. On November 26, 1985, Amstar moved for an order holding Envirotech in contempt. At a hearing on January 3, 1986, the court orally denied the motion, saying, "on the current status of the record I can't find it's essentially obvious that there's been a violation [of the injunction order]." The court issued a written order on May 15, 1986. Amstar says the district court required "an excessive degree of proof."
 
 
 71
 In a civil contempt proceeding, the movant must prove a violation by clear and convincing evidence. KSM Fastening Sys., 776 F.2d at 1524, 227 U.S.P.Q. at 677; Heinold Hog Mkt., Inc. v. McCoy, 700 F.2d 611, 614 (10th Cir.1983). Here, Amstar could meet that burden only by showing that Envirotech's redesigned unit fell within the adjudicated scope of the claims of the Eis patent, and was, therefore, an infringement. KSM Fastening Sys., 776 F.2d at 1530, 227 U.S.P.Q. at 682.
 
 
 72
 Amstar submitted with its motion an affidavit in which its expert, unlike his approach when testifying at the damages trial, compared drawings of Envirotech's redesigned units with the adjudicated infringing units. The expert concluded that the redesigned unit was equivalent to the infringing units, and that their operation would, therefore, infringe the claims of the Eis patent. Amstar also submitted transcript excerpts from a hearing in another case, in which Envirotech's expert compared the operation of the redesigned units with that of the adjudicated infringing units and said that the operation was "in essence" the same. None of that evidence establishes that Envirotech's redesigned units fell within the adjudicated scope of the claims of the Eis patent.
 
 
 73
 Amstar insisted to the district court, and insists to us, that the leased U.S. Borax unit was identical to the adjudicated infringing units because a U.S. Borax employee shown two drawings during a deposition was unsure which one represented the leased unit. Ironically, however, the district court could have found from the witness' doubt that there was a "fair ground of doubt" as to whether the U.S. Borax unit infringed. See MAC Corp. of Am. v. Williams Patent Crusher & Pulveriser Co., 767 F.2d 882, 886, 226 U.S.P.Q. 515, 518 (Fed.Cir.1985).
 
 
 74
 The district court did not require "an excessive degree of proof" where, as here, it could properly have determined that Amstar did not prove a violation by clear and convincing evidence.
 
 III. Refusal to Enjoin EFN
 
 75
 In 1978 EFN purchased seven infringing devices from Envirotech and since 1980 has operated them at its uranium ore processing facilities. Amstar says EFN's operation infringes process claims 1 and 8 of the Eis patent. In denying Amstar's motion to enjoin EFN, the district court required Envirotech's parent company to file a guarantee to indemnify Amstar. Amstar says the district court erred in refusing to enjoin EFN.
 
 
 76
 Under 35 U.S.C. Sec. 283, district courts have broad discretion in determining whether the facts of a situation warrant an injunction. Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1002, 228 U.S.P.Q. 562, 567 (Fed.Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986), Roche Prod., Inc. v. Bolar Pharmaceutical Co., 733 F.2d 858, 865, 221 U.S.P.Q. 937, 942 (Fed.Cir.), cert. denied, 469 U.S. 856, 105 S.Ct. 183, 83 L.Ed.2d 117 (1984). We may reverse the district court's denial only if Amstar shows that the district court abused its discretion. Windsurfing Int'l, 782 F.2d at 1002, 228 U.S.P.Q. at 567.
 
 
 77
 Amstar argues, in essence, that the district court should have enjoined EFN to punish it for buying infringing devices and for participating in this litigation. Punishment is not the purpose of an injunction, however. Under 35 U.S.C. Sec. 283, courts may grant injunctions "in accordance with the principles of equity." In delineating those principles, the Supreme Court has noted that the "historic injunctive process was designed to deter, not to punish." Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944).
 
 
 78
 The district court awarded Amstar its lost profits for Envirotech's sale of the seven infringing devices that EFN bought. Respecting those devices, Amstar does not contend that it sought any damages other than lost profits, or that an award of lost profits will not fully compensate it. Having been awarded full compensation for the making and using of existing infringing thickeners, therefore, Amstar is not entitled to enjoin their use. Stickle v. Heublein, Inc., 716 F.2d 1550, 1563, 219 U.S.P.Q. 377, 386 (Fed.Cir.1983); Wagner Sign Serv., Inc. v. Midwest News Reel Theatres, Inc., 119 F.2d 929, 930, 49 U.S.P.Q. 287, 288-89 (7th Cir.), cert. dismissed, 314 U.S. 702, 62 S.Ct. 50, 86 L.Ed. 562 (1941); see King Instrument Corp. v. Otari Corp., 814 F.2d 1560, 1564, 2 U.S.P.Q.2d 1201, 1204 (Fed.Cir.1987).
 
 
 79
 Amstar argues, however, that it is entitled to an injunction because it has received no money yet; Envirotech's parent company has merely filed a corporate guarantee, which promises to pay the judgment by certified check within 30 days of this court's mandate. Amstar's intimations that Envirotech's parent company may not pay the judgment are unsupported. Under the circumstances of this case, the filing of a corporate guarantee is sufficiently equivalent to compensation to warrant denial of an injunction against EFN. Accord Wagner Sign Serv., 119 F.2d at 930-32, 49 U.S.P.Q. at 289-90 (supersedeas bond guaranteeing payment of damages when ascertained is equivalent to compensation).
 
 
 80
 Amstar has shown us no basis from which to conclude that the district court abused its discretion in refusing to enjoin EFN.
 
 IV. Request For Reexamination
 
 81
 On May 15, 1986, the district court denied Amstar's motion to enjoin Envirotech from proceeding with its request for reexamination of the Eis patent. 231 U.S.P.Q. 320. While this appeal was pending, on June 2, 1987, the PTO issued a reexamination certificate confirming claims 1-11 of the Eis patent. Because Envirotech can no longer be enjoined from proceeding with its request, a reversal of the district court's order denying an injunction would be inappropriate. See Burke v. Barnes, --- U.S. ----, 107 S.Ct. 734, 736, 93 L.Ed.2d 732 (1987); Diffenderfer v. Central Baptist Church of Miami, Fla., 404 U.S. 412, 415, 92 S.Ct. 574, 576, 30 L.Ed.2d 567 (1972).
 
 
 82
 "Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case was decided by the court whose judgment we are reviewing." Burke, 107 S.Ct. at 736. We may not, as Envirotech now requests, render an opinion on an abstract proposition of law. Diffenderfer, 404 U.S. at 414, 92 S.Ct. at 575; Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Because no live case or controversy remains respecting the district court's refusal to enjoin Envirotech from proceeding with its request for reexamination, we dismiss as moot that portion of Amstar's appeal. In so doing, we express no opinion on the merits of the district court's order.
 
 V. Motion to Set Aside Judgment
 
 83
 Envirotech and EFN appeal from the district court's denial of their motion under Fed.R.Civ.P. 60(b) to set aside its May 3, 1983 judgment on validity and enforceability of the Eis patent. They apparently based their motion on Rules 60(b)(2) and 60(b)(3):
 
 
 84
 (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
 
 
 85
 (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.
 
 
 86
 The "newly discovered evidence" includes two papers in The Proceedings of the 34th Conference of the Queensland Society of Sugar Cane Technologists. Envirotech and EFN say that Amstar knew all along about those papers and that its failure to disclose them constituted a fraud on the court.*
 
 
 87
 On December 12, 1985, the district court held a hearing on the Rule 60(b) motion. On January 3, 1986, it orally denied the motion, stating, "there was appropriate opportunity to litigate the issues that we're concerned with." The court issued a written order denying the motion on May 15, 1986.
 
 
 88
 Because denial of a Rule 60(b) motion is a procedural issue not unique to patent law, we apply the rule of the regional circuit where appeals from the district court would normally lie, here the Tenth Circuit. Atari, Inc. v. JS & A Group, Inc., 747 F.2d 1422, 1438-40, 223 U.S.P.Q. 1074, 1086-87 (Fed.Cir.1984) (in banc); Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1574-75, 223 U.S.P.Q. 465, 471 (Fed.Cir.1984); see Ashland Oil, Inc. v. Delta Oil Prod. Corp., 806 F.2d 1031, 1032, 1 U.S.P.Q.2d 1073, 1074 (Fed.Cir.1986).
 
 
 89
 One seeking to set aside a judgment under Rule 60(b)(2) or 60(b)(3) must move within a reasonable time, and not more than one year after the entry of judgment. Security Mut. Casualty Co. v. Century Casualty Co., 621 F.2d 1062, 1067 (10th Cir.1980); Fed.R.Civ.P. 60(b). Here, the district court entered its judgment on May 3, 1983, but Envirotech and EFN did not file their Rule 60(b) motion until March 27, 1985, nearly two years later.
 
 
 90
 Envirotech and EFN argue that the time for filing their Rule 60(b) motion should be computed from the date of this court's decision on appeal, March 27, 1984. Because our decision related only to the judgment on infringement, however, that date is irrelevant. Envirotech and EFN took no appeal from the judgment they now want to set aside. Rule 60 is not a substitute for appeal. Brown v. McCormick, 608 F.2d 410, 413 (10th Cir.1979).
 
 
 91
 Envirotech and EFN say the one year time limit does not apply because of this in Rule 60(b): "This rule does not limit the power of a court ... to set aside a judgment for fraud upon the court." However, if Amstar did not disclose to the court certain publicly available prior art, that would not amount to fraud on the court within the Tenth Circuit's definition:
 
 
 92
 Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It has been held that allegations of nondisclosure in pretrial discovery will not support an action for fraud on the court. It is thus fraud where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function--thus where the impartial functions of the court have been directly corrupted.
 
 
 93
 Bulloch v. United States, 721 F.2d 713, 718 (10th Cir.1983) (citation omitted).
 
 
 94
 Envirotech and EFN have shown no basis from which to conclude that the district court erred in its interpretaion of Rule 60(b).
 
 VI. Pending Motions
 
 95
 Amstar moved to supplement its appendix and reply brief on appeal, seeking to include "newly discovered evidence" and related discussion. Because none of that evidence was before the district court, submission to this court was improper. Ballard Medical Prods. v. Wright, 821 F.2d 642, 643 (Fed.Cir. June 24, 1987); Thomas & Betts Corp. v. Litton Sys., Inc., 720 F.2d 1572, 1581 n. 6, 220 U.S.P.Q. 1, 7 n. 6 (Fed.Cir.1983). Amstar's motion is denied. Envirotech's motion for an enlargement of time to file an opposition to Amstar's motion is granted.
 
 
 96
 Envirotech's unopposed motion to file a supplement to the joint appendix with material that was before the district court is granted.
 
 CONCLUSION
 
 97
 The parties have shown no error of law or fact and no abuse of discretion in any of the appealed rulings of the district court. We dismiss as moot Amstar's appeal from the court's order denying Amstar's motion to enjoin Envirotech from proceeding with its request for reexamination and affirm the judgment appealed from in all respects.
 
 
 98
 DISMISSED IN PART; AFFIRMED IN PART.
 
 
 
 *
 Though Envirotech presented the same two papers to the PTO for its consideration in the reexamination proceeding, the PTO reaffirmed the patentability of the inventions claimed in the Eis patent