**THK AMERICA, INC., Plaintiff,**

v.

**NSK, LTD. and NSK Corporation, Defendants.**

No. 90 C 6049.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 10, 1996.

As Amended Jan. 17, 1996.

---

Robert E. Wagner, James J. Jagóda, Wallenstein & Wagner, Chicago, IL, John E. Kidd, John E. Daniel, Michael A. O'Shea, Neil G. Cohen, Marni J. Beck, Rogers & Wells, New York City, James E. Armstrong, III, Ken–Ichi Hattori, Armstrong, Westerman, Hattori, McLeland & Naughton, Washington, DC, for Plaintiff.

Edward M. O'Toole, Allen H. Gerstein, Kevin D. Hogg, Anthony Nimmo, Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASHMAN, United States Magistrate Judge.

This case was brought by Plaintiff, THK America, Inc. ("THK"), charging Defendants, NSK, Ltd. and NSK Corporation (collectively, "NSK"), with willful infringement of U.S. Patents 4,040,679 (" '679 Patent") and 4,253,709 (" '709 Patent"). NSK has counterclaimed that THK's patents are invalid, unenforceable and/or not infringed. The alleged infringing devices are linear grids—devices which facilitate linear movement of an item along a fixed rail.

Discovery has been closed and in preparation for submission of final pretrial order materials, the parties have submitted Motions *in Limine*—five on behalf of THK and six on behalf of NSK. This Court has disposed of THK's first Motion *in Limine* by means of a Report and Recommendation. This Memorandum Opinion and Order will cover the subject of all of the balance of THK's Motions *in Limine* and of NSK's Motions *in Limine*.

### THK's Motions In Limine

**THK's Second Motion *In Limine:* To preclude NSK from mentioning THK's non-production of its patent opinions and from asking the jury to draw a negative inference from THK's non-production of its patent opinions.**

■ Prior to commencing this action, THK obtained certain patent infringement opinions from its patent lawyers. Those opinions are, without question, privileged attorney-client communications. NSK argues that the privilege will be eviscerated if NSK is allowed to ask the jury to draw an adverse inference from the fact that THK chose to withhold production of the opinions of its counsel in order to preserve their privileged status. NSK intends to present evidence of these withholdings to the jury as being relevant to the issues of enforceability; willfulness; and bad faith litigation.

■ It has long been established that attorneys' patent opinions rendered by attorneys to their clients are protected by the attorney-client privilege. As part of this protection, adverse inferences against parties who refuse to disclose attorney opinions are disallowed. *Parker v. Prudential Insurance Company of America*, 900 F.2d 772 (4th Cir. 1990); *A.B. Dick Co. v. Marr*, 95 F.Supp. 83, 101 (S.D.N.Y.1950), *appealed dismissed by*, 197 F.2d 498 (2d Cir.1952), *cert. denied*, 344 U.S. 878, 73 S.Ct. 169, 97 L.Ed. 680 (1952). Disallowing adverse inferences is a logical extension of the attorney-client privilege since allowing a negative inference would in

many cases oblige the client to produce the privileged materials.

In patent cases, negative inferences resulting from failure to produce patent legal opinions have been allowed in situations where potential infringers actually put the advice of counsel directly at issue in the case. For example, where a potential infringer charged with willful infringement defends against the charge by citing its reliance on the advice of counsel, it is clear that such advice should be produced or a negative inference concerning those opinions should be drawn. *Fromson v. Western Litho Plate and Supply Co.*, 853 F.2d 1568 (Fed.Cir.1988), *aff'd*, 909 F.2d 1495 (Fed.Cir.1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991); *Underwater Devices Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380 (Fed.Cir.1983). Another example of where an alleged infringer put the advice of counsel in issue is by asserting the affirmative defense of estoppel and using his patent counsel's opinion to prove reliance, a situation not applicable to THK in this case. *Southwire Co. v. Essex Group, Inc.*, 570 F.Supp. 643, 650 (N.D.Ill.1983).

■ NSK argues that it intends to prove that THK unreasonably and inexcusably slept on its rights after it knew or should have known of NSK's U.S. sales activities, since THK did not bother to get any opinions of U.S. patent counsel about its patents relative to NSK until years after its knowledge. Thus, argues NSK, the opinions are relevant. However, this Court does not agree that relevance is the issue in this motion. Rather, the issue in this motion is whether THK has placed its lawyers' opinion in issue in the case, thereby waiving the privilege. In other words, the attorney-client privilege applies even when attorneys' opinions are relevant. The exception to the privilege arises when the party asserting the privilege has decided to rely on those opinions or has otherwise placed the opinions in issue, thus waiving the

privilege. In this case, THK's failure to consult an attorney for years regarding the patents, cannot be construed in any way as a reliance on the contents of those opinions which were ultimately received nor a waiver of the privilege, since THK is not the alleged infringer. THK simply has not placed those opinions in issue.[1]

NSK also argues that since the Fifth Amendment privilege against self-incrimination, being of constitutional dimension, does not forbid a civil litigant from drawing negative inferences from an opponent's assertion of the attorney-client privilege, *see Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the same logic pertains or ought to pertain regarding the attorney-client privilege which is not of constitutional dimension. This Court does not agree. The policy behind the Fifth Amendment privilege, by its own terms, relates to criminal law. The concern is that allowing a negative inference in a criminal action would allow the government to load up on a defendant or tilt the scales too far against a defendant. These policies have no application in civil law. The attorney-client privilege, to the contrary, applies both to criminal and civil law, it being a policy enacted to allow effective legal representation in any context. Thus, the Supreme Court's pronouncements in *Baxter*, have no applicability to the attorney-client privilege.

NSK also cites *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1579 (Fed.Cir. 1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987), for the proposition that a negative inference can be drawn even where the withholding party places no reliance on the privileged communications. This Court disagrees. The court indicated in *Kloster* that the alleged infringer had a duty to obtain a patent legal opinion. Thus, a negative inference could be drawn from their failure to produce such an opinion. In the

---

1. NSK complains that Magistrate Judge Rosemond ordered its legal opinions produced (*see THK America, Inc. v. NSK Company, Ltd.*, 157 F.R.D. 637, 650 (N.D.Ill.1993)), and fairness dictates that THK's legal opinions be produced on penalty of negative inferences drawn. This Court disagrees. It was NSK who voluntarily placed in issue the question of its detrimental reliance on THK's delay in filing suit, thus bringing into issue its attorneys' opinions rendered to it which bear on its reliance. This Court therefore rejects NSK's argument that since it has been required to reveal its legal opinions, that therefore THK must also do so or negative inferences should be available to be argued.

instant case, THK has no such corresponding legal duty to obtain legal counsel or legal opinions prior to the filing of a suit. Thus, *Kloster* has no applicability here.

For the above reasons, this Court grants THK's Motion *in Limine*. NSK is precluded from making any mention of the fact that THK has refused to disclose its attorney patent opinions and is precluded from arguing to the jury that a negative inference can be drawn based thereon.

**THK's Third Motion *In Limine*: To preclude NSK from presenting evidence or arguments relating to NSK's rejected antitrust counterclaims or the subject matter of the counterclaims.**

In 1988, Hiroshi Teramachi wrote two letters addressed to the Japanese bearing industry. The subjects of the letters were prices and competition in the bearing industry in Japan. NSK intends to introduce these letters into evidence as being relevant to the issues of laches and estoppel.

 A presumption of laches exists where a delay in filing suit extends for six years from when the patentee knew or should have known of the infringement, and a suit may be entirely barred by the defense of estoppel if the patentee has misled the alleged infringer into believing it would not be sued and the alleged infringer relies on that misleading conduct to its detriment. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020 (Fed.Cir.1992). THK has indicated that it intends to defend against the laches charge by showing that it had justification for the six-year delay and that it should not be estopped from asserting its patents because its delay could not have misled NSK. As evidence that its inaction could not have misled NSK, THK intends to bring evidence of oral discussions regarding the patent controversy in 1988 between the top management of THK and NSK.

In response to THK's evidence, NSK intends to offer evidence that the 1988 meetings were preceded by Mr. Teramachi's two letters to NSK having to do with price cooperation in the bearing industry. Therefore, argues NSK, the 1988 meetings had to do with price cooperation and did not have anything to do with resolving patent disputes.

It appears to this Court that the letters in question may very well be marginally relevant to the issues discussed above, since they may provide some context to the discussions. Obviously, the actual discussions at these meetings are much more important than the preceding letters. However, despite this marginal relevance, this Court decides that THK's Motion *in Limine* to preclude introduction of these letters should be granted, for the reasons which follow.

 It appears that the first time NSK asserted that it intended to use price fixing as a part of its laches and estoppel defenses (and thereby use or seek to use these documents in support of the price fixing scenario) was orally on December 8, 1994 and in writing as part of a Proposed Final Pretrial Order on March 31, 1995; both dates being long after fact discovery had been closed. Despite numerous opportunities to do so, NSK made no reference to these documents as being relevant to those issues during numerous and lengthy depositions of Mr. Teramachi and at other times. Most important, THK propounded contention interrogatories to NSK to explain the bases for NSK's laches and estoppel defenses. The documents were not disclosed in answers to these interrogatories. Discovery in this case has been closed for many months. To allow this new contention into evidence would greatly prejudice THK in that it has had no opportunity to explore their ramifications by its own discovery.

NSK argues that it did reveal its intentions in an answer to a notice to admit; however, this answer to the notice to admit was done in the context of a then pending attempt by NSK to file a counterclaim based upon alleged anti-trust violations relating to price fixing. The answer to the notice to admit was given during the pendency of the motion for leave to file the counterclaim and fit in with the theory of the counterclaim. Leave to file the counterclaim was ultimately denied. Therefore, the answer to the notice to admit gave no reason for the reader to assume that these letters had anything to do with laches or estoppel.

The Court agrees with THK that this eleventh hour attempt at gamesmanship should

not be allowed. *See ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.,* 53 F.3d 186, 190 (8th Cir.1995) (plaintiff's eleventh hour attempt to switch the bases for its alleged claim after omitting such information from interrogatory requests justified exclusion of evidence supporting this new basis).

■ Furthermore, courts have recognized that insinuations of price fixing in the context of a patent trial may be inflammatory. *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986 (9th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980). Here, as the Court has noted above, relevance of the documents is marginal. The potential unfair prejudice is great. Under the balancing act required under FED.R.EVID. 403, this Court finds that the danger of unfair prejudice overwhelms any probative value of this evidence.

The Court therefore grants THK's Motion *in Limine* on this subject and accordingly the letters in question are hereby excluded and no argument nor mention may be made of the same during the trial. However, this Order should not be construed as barring any of the contents of the discussions of the 1988 meetings. These are admissible because THK intends to rely on part of those discussions, thus opening the door.

**THK's Fourth Motion *in Limine*: To prevent introduction of evidence of a foreign conviction, more than 12 years old of Hiroshi Teramachi.**

In 1983, Hiroshi Teramachi was convicted in Japan for filing false corporate income tax statements for the fiscal years 1979 and 1980. He was fined and sentenced to a two-year prison term with a four-year stay of execution of the imprisonment. Mr. Teramachi paid the fine and was never required to serve any time of imprisonment. NSK intends to use evidence of this conviction at trial.

Rule 609(b) of the FEDERAL RULES OF EVIDENCE excludes such prior conviction evidence if ten years have passed "since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date...." NSK argues that the ten-year clock of Rule 609(b) starts with the date of "release of the witness from the confinement imposed" and argues that since Mr. Teramachi was not released from the *sentence* of confinement imposed until 1987, the ten-year period will not expire until 1987. NSK argues that the release date of the sentence governs and cites *Trindle v. Sonat Marine, Inc.,* 697 F.Supp. 879, 881 n. 4 (E.D.Pa.1988), as its sole authority.

■ This Court does not agree. First, the plain words of the rule which uses the word "confinement" must mean that the ten-year period starts when the witness leaves actual imprisonment. Indeed, BLACK'S LAW DICTIONARY defines confinement as "state of being confined; shut in; imprisoned; detention in penal institution." Secondly, the only case relied upon by NSK—*Trindle*—a District Court opinion—has been criticized by appellate authority, the Fifth Circuit, in *United States v. Daniel,* 957 F.2d 162, 168 (5th Cir. 1992), as mistaken *dicta.*

Finally, good authority exists for the proposition that the ten-year clock commences from the date of conviction in cases where a defendant is given probation. *United States v. Lopez,* 979 F.2d 1024, 1033 (5th Cir.1992), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993); *United States v. Daniel,* 957 F.2d 162, 168 (5th Cir.1992). The court in *Daniel* stated its reasoning succinctly:

> The historical note to Rule 609 shows that, prior to 1972, the rule contemplated that the ten-year period should run from "the expiration of the period of his parole, probation, or sentence." This section was amended in 1972, however, and now states that a conviction is not admissible if more than ten years have elapsed since "release from confinement." The change in the language of the rule forecloses the interpretation urged by the appellants. Indeed, the Daniels can point to no authority for their argument, save the mistaken dicta in *Spindle* [sic].

It is therefore the opinion of this Court that the evidence of the conviction is barred by the ten-year rule of Rule 609(b).

■ However, this does not end the inquiry. The rule provides an exception to the

ten-year time limit where "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." The Court may, within its sound discretion, admit evidence of a prior conviction over ten years old under this rule. *Stutzman v. CRST, Inc.*, 997 F.2d 291, 298–99 (7th Cir.1993). However, the court in *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431 (2d Cir.1993), a case relied upon heavily by NSK, recognized "that Congress intended that convictions over ten years old be admitted very rarely and only in exceptional circumstances." *Zinman* at 434. In *Zinman*, the court allowed into evidence against a plaintiff whose vocation was a podiatrist, a conviction of medicare fraud and a podiatry license suspension. Since the plaintiff in *Zinman* claimed that because of a personal injury, he intended to practice podiatry until age 70, the court felt that the conviction and suspension was highly relevant to the issue of whether Zinman had discontinued his practice solely because of the claimed injury. The court concluded that any resulting prejudice to Zinman was substantially outweighed by the probative value of the evidence.

■ Factors to consider in determining whether a conviction is sufficiently probative to outweigh its prejudice were listed in *United States v. Mahone*, 537 F.2d 922, 929 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 .S.Ct. 646, 50 L.Ed.2d 627 (1976). Those factors are "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past conviction and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue."

■ As to the first factor, the impeachment value is of some importance in this case. It is true, as argued by NSK, that a conviction of tax fraud, which necessarily consists of filing false papers with a government agency is of considerable value as impeachment on issues in this patent case of equitable estoppel, inequitable conduct and laches. However, the impeachment value of that conviction is minimal as to Mr. Teramachi's testimony regarding the technical aspects of the patent. Recognizing that "the mere fact that the defendants' credibility is

in issue . . . cannot, by itself, justify admission of evidence of convictions over ten years old," *United States v. Brown*, 603 F.2d 1022, 1028 (1st Cir.1979), this Court concludes that the heightened level of probative value required under Rule 609(b) has not been reached on this factor.

As to the second factor, the Court is required to take into account the point in time of the conviction and the subsequent history of the witness. Obviously, "the probative value of a prior conviction on the issue of credibility tends to decrease with the passage of time, (while the danger of prejudice clearly increases)," *United States v. Shapiro*, 565 F.2d at 481.

While the length of time since this conviction is not substantially beyond the ten-year limit, the subsequent history of the witness overwhelmingly overcomes the fact that the conviction is only two years beyond the application of Rule 609. The record is clear, cited by Magistrate Judge Rosemond in his Order of August 11, 1993, as to awards received by Mr. Teramachi since his conviction and his appropriate behavior since his conviction. Therefore, it appears that the second factor greatly supports exclusion of the conviction evidence.

The third factor requires an inquiry into the similarity between the past crime and the crime charged. Since Mr. Teramachi is not being accused of a crime here, this factor is not applicable in this case. However, and to the extent that one may consider as a crime, NSK's allegations that Mr. Teramachi committed inequitable conduct by withholding information from the U.S. Patent Office, there is a danger of unfair prejudice since the impeaching crime and the conduct under attack both involved a misleading of a government office. According to *United States v. Shapiro*, 565 F.2d 479, 481 (7th Cir.1977), there is a danger of unfair prejudice where the impeachment of credibility is accomplished with evidence of a similar crime committed in the past. Therefore, the third factor warrants exclusion of the prior conviction.

The fourth and fifth factors consider the importance of defendants' testimony, *i.e.*, whether the Defendant would avoid testifying because of the admission of evidence of a

prior conviction and the centrality of the credibility issue. Mr. Teramachi's testimony appears to be important as to the issues of inequitable conduct, and laches. His testimony is considerably less important as to the other main issues in this patent case, *i.e.*, validity, infringement and damages; all of which will be subjects of expert testimony. This factor favors neither inclusion nor exclusion of the evidence.

In sum, this Court cannot say that, after considering all of the factors, that the probative value of the evidence substantially outweighs its prejudicial effect. To the contrary, this Court rules that prejudicial effect outweighs probative value, a situation which warrants exclusion of the evidence under the rule. .

NSK argues further that prior conviction is admissible under the FED.R.EVID. 404(b) which allows such evidence in order to show motive, intent, and absence of mistake. This rule also provides that the evidence of other crimes "is not admissible to prove the character of a person in order to show action in conformity" with that character. Although the court in *United States v. Prevatte*, 16 F.3d 767, 774 (7th Cir.1994), lays out a four-prong test to determine admissibility, this Court deems it unnecessary to go through each prong because the first factor so overwhelmingly favors ineligibility of the evidence.

 The first factor according to *Prevatte* is that the evidence must be directed toward establishing a matter other than the person's propensity to commit the crime charged. NSK argues that the prior tax fraud conviction shows a motive and intent to commit fraud and deceit in order to artificially inflate the value of his company's stock. However, Rule 404(b) does not allow prior conviction evidence merely to establish the general motive of financial gain. *Prevatte*, 16 F.3d at 776. What is left, therefore, of NSK's argument is prohibited propensity evidence. NSK's argument, when boiled to its essentials, is that Mr. Teramachi has a propensity for filing fraudulent documents with governmental agencies in order to make money. This is evidence that is expressly excluded under Rule 404(b).

Therefore, all evidence and argument relating to this prior conviction will be excluded from the trial for all purposes.

**THK's Fifth Motion *In Limine*: To preclude NSK from using certain terms within the hearing of the jury.**

 THK moves pursuant to FED.R.EVID. 401–403 to preclude NSK from using the term "monopoly" within the hearing of the jury; referring to injunctive relief or the effects of injunctive relief; and making any reference at trial to the issue of inequitable conduct.

Despite the fact that THK cites certain caselaw for the proposition that in a patent jury trial, the term "monopoly" is "likely to be prejudicial and should be avoided," including, *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 756 F.2d 1556, 1559 (Fed.Cir. 1985), these citations are inapplicable in this case for the following reason: Certain correspondence from NSK's attorneys to THK, as to which there is no question of admissibility, liberally use the term monopoly. The term cannot be excised from these documents without destroying the context. Therefore, as to the word monopoly, THK's motion is denied.

 THK moves the Court to preclude NSK from using the term "injunctive relief" or arguing the effect of injunctive relief to the jury. However, THK at the same time recognizes that it will mention an injunction for the purpose of addressing the issue of "accelerated market entry damages." This Court believes that THK's reference to injunctive relief or to the effect of injunctive relief opens the door to NSK's challenge to THK's "accelerated entry" damages theory. Apparently, THK's damages expert will bring to the jury calculations which assume that NSK will be enjoined from selling linear guides until the patent expires in 1999 and that after expiration NSK will resume its sales in a better position than it would have been had it never infringed the patent. Certainly NSK should be entitled to challenge those calculations and challenge that expert concerning the assumptions of injunction, its duration and effect. Since THK has opened the door, NSK is allowed to walk through it. However, this Order does not give carte

blanche to NSK to exploit the notion of injunctive relief in a way designed to elicit sympathy to NSK for the effects of the injunctive relief upon its work force or for any other non-relevant references. Any such references are impossible to particularize at this time and will be dealt with by the Court upon proper objection at the time.

Thus, at this time, THK's motion to preclude use of the terms injunction and injunctive relief is denied.

As to the issue of preclusion of the term inequitable conduct, this issue was dealt with by this Court in its Report and Recommendation on THK's first Motion *in Limine*.

### NSK's Motions In Limine

**NSK's First Motion *In Limine*: To exclude evidence or arguments which anticipate Defendants' affirmative defenses.**

NSK seeks to prevent THK from anticipating affirmative defenses of patent invalidity or enforcement, that is, limiting THK, in its case in chief, to producing evidence that it must produce to sustain its case. NSK, in its brief, categorized in some detail, the evidence which it contends anticipates affirmative defenses. NSK's argues that orderly procedure should allow each party to perform its own statutorily assigned burdens of going forward without disruption by having its evidence anticipated by the other party. NSK's argument was best articulated by Judge Markey, the then Chief Judge of the Federal Circuit in *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,* 806 F.2d 1565 (Fed.Cir.1986):

> As here, patentees have historically sought to 'go first' with testimony on validity, on the empirically unproven premise that a favorable 'first impression' of the merits of the invention will carry through to victory....
>
> Recognizing that trials conducted in accord with the statutorily assigned burdens would result in assured victory or more victories for either side, courts should consider pretrial orders designed to facilitate such trials.

And again by Judge Markey in a paper entitled, *"On Simplifying Patent Trials,"* 116 F.R.D. 369, 374–75:

> Trial time should not be wasted while a patentee attempts to disprove a defense that has not yet been presented, a defense that may well be stronger in the patentees' mind than the actual presentation that might have been made by a defendant required to shoulder its statutory burden....
>
> Further, the choice of non-adherence and statutory burden assignment is not open to either counsel or judge. Respecting orderly procedure, a defendant asserting invalidity has a right to go first at trial when that issue is reached, and patentees have no right to pre-empt or 'steel a march' on defendant in the orderly conduct of the trial.... Trials are simplified when each party attempts to carry its own, and only its own, burden, and when each party's evidence is presented in proper order at trial.

■ This Court cannot agree for the purposes of this case. First, the cited language of Judge Markey is, admittedly, *dicta*. NSK has cited no case and this Court can find none, that holds that a plaintiff should be so restricted in presentation of evidence. Second, both parties agreed, on oral argument, that anticipating affirmative defenses is routinely done in patent cases. Thirdly, and most important, trials just do not seem to be able to work in this fashion. Issues overlap. Witnesses may be presented for more than one issue and thus their testimony would have to be bifurcated in order to comply with such a strict rule. At trial, witnesses do not stand at attention outside the courtroom door waiting to be interrogated on only one issue. Witnesses sometimes blurt out information unexpectedly, thus breaking up the proposed "orderly" presentation. The bottom line on this issue is that, while theoretically, trials should be conducted in accordance with the statutorily assigned burdens, practically, the lines cannot be drawn that clearly at trial. The issues are *too interwoven to allow for* such a sanitary trial.

Thus, NSK's first motion *in limine*, to exclude evidence or arguments which anticipate defendants' affirmative defenses, is denied.

**NSK's Second Motion *In Limine:* To preclude reference to NSK's prior contentions of non-infringement regarding the '679 Patent.**

■ Originally, NSK denied infringement of the '679 Patent, based on a particular construction of certain claim terms. Because it became necessary for NSK to waive its attorney-client privilege in order to defend against the willfulness charge by showing good faith reliance on advice of counsel, it became known that some of its legal advice expressed a view inconsistent with a non-infringement defense. NSK then waived its non-infringement defense. NSK now seeks to keep from the jury this withdrawal of a legal position on the grounds of "undue prejudice and confusion of the issues."

THK, on the other hand, calls the change in legal position a "flip-flop" and contends that the flip-flop is relevant evidence on two issues: Indefiniteness and willful infringement or bad faith litigation.

As to the issue of indefiniteness, THK argues that NSK flip-flopped on its reading of the '679 claim. NSK had no problem for years in understanding what the patents meant and therefore the patent is not indefinite. The flip-flop underlines this point. This Court disagrees. The waiver of the non-infringement defense is not a flip-flop on the issue of indefiniteness. Abandonment of a defense does not necessarily mean that the abandoner feels his defense is invalid or that the abandoner changed his mind. Withdrawal of an argument does not necessarily concede that the argument was invalid in the first place. Evidence of withdrawal of this defense is, therefore, precluded. Barring this evidence, however, will not preclude THK from producing as, evidence, attorneys' opinions, which bear on the issue of indefiniteness and evidence that NSK had no problem for years in understanding what the patents meant. THK is, however, prohibited by this order only from commenting on the withdrawal of the defense within the pleadings of this lawsuit.

THK also argues that the withdrawal of the defense shows willful infringement, *i.e.,* it is inconsistent with a good faith belief that NSK did not infringe. Once again, this Court disagrees. An abandonment of a claim or defense does not establish that the claim or defense was frivolous. Any contrary ruling by this Court would chill litigants' ability to reduce issues in cases, a reduction much to be desired. *See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 895 F.2d 1403, 1408 (Fed.Cir.1990). In fact, had NSK not withdrawn its defense, THK, no doubt, would have argued that NSK made a bad faith presentation of unsupportable defenses and that is evidence that the infringement was willful. *See dicta* in *Gustafson, Inc. v. Intersystems Industrial Products, Inc.,* 897 F.2d 508, 511 (Fed.Cir.1990). NSK would have been criticized whether it withdrew the defense or not. This Court, therefore, grants NSK's motion and THK is precluded from presenting argument or evidence of NSK's withdrawal of a defense in this case; provided however that this Order shall not preclude any evidence of NSK's varying legal opinions or NSK's varying constructions or interpretations of the patents in issue.

**NSK's Third Motion *In Limine:* To exclude evidence of pretrial sanctions levied by the Court against NSK and its former trial counsel.**

Magistrate Judge Rosemond sanctioned NSK for litigation abuse for two matters.[2] The sanctions totalled $96,140. The sanctions were for NSK's overuse and overdesignation of the Attorneys Eyes Only designation which violated the protective order entered in the case and violated certain representations made by NSK to the Court and for NSK improperly twice moving the Court to bifurcate the liability and damages issues in this case, the first of such motions having been denied by the Court.

THK argues that admission of this evidence is relevant to the issue of willful infringement and is warranted by caselaw. NSK argues that the caselaw is inapplicable;

2. Other conduct of NSK was also sanctioned by Judge Rosemond but are not relied upon by THK

for this motion.

the evidence is not relevant and if relevant its prejudicial effect exceeds its probative value.

 The law is undisputed that in determining whether infringement has been willful, a court should consider the totality of the circumstances. *Rite–Hite Corp. v. Kelley Co.,* 819 F.2d 1120, 1125 (Fed.Cir.1987). Factors to consider include, according to *Mobil Oil Corp. v. Amoco Chemicals Corp.,* 779 F.Supp. 1429, 1484 (D.Del.1991), *aff'd,* 980 F.2d 742 (Fed.Cir.1992), "the infringer's behavior as a litigant," citing *Bott v. Four Star Corp.,* 807 F.2d 1567, 1572 (Fed.Cir.1986).

Other cases holding that a defendant's litigation behavior may be admissible include *Amstar Corp. v. Envirotech Corp.,* 823 F.2d 1538, 1547 (Fed.Cir.1987); *Afros S.p.A. v. Krauss–Maffei Corp.,* 671 F.Supp. 1402 (D.Del.1987); *Gustafson, Inc. v. Intersystems Industrial Products,* 897 F.2d 508, 511 (Fed.Cir.1990).

NSK criticizes application of these cases by arguing that substantially all of these cases are non-jury cases where the issue of undue prejudice to a jury was not addressed. However, NSK did not cite any law supporting a theory that admissibility of evidence in a case such as this may be affected by the identity of the fact-finder. The cited caselaw is applicable here.

No case is cited for the proposition that every sanctionable litigation conduct may be admissible to show willfulness. Sanctionable rule infractions may include lateness in answering discovery, tardiness in making court appearances, inappropriate comments during depositions or in court, and a whole host of "Rambo" style litigation tactics. It can hardly be argued that any of this type of litigation behavior is admissible as being relevant to any issue in a patent case. The key to admissibility is relevance of the sanction to willful infringement.

 On the matter of filing a second motion to bifurcate, THK argues relevance in that the purpose of the motion was to obtain a bifurcation of the liability issues from the damages which would then allow NSK to withhold attorneys' opinion letters during the liability sessions without any adverse inferences. The second motion was a futile second attempt to avoid disclosure of the documents. Such conduct is relevant to the issue of willfulness, argues THK. This Court disagrees.

There is no question that NSK had the right to bring its original motion to bifurcate. That motion was designed to avoid the very same disclosure of documents relating to willfulness as did the second motion. The original motion was a proper motion brought for a proper purpose. The second motion was sanctioned, not because it was brought for an improper purpose or because the motion was brought in order to avoid disclosure of documents, but rather because it duplicated a previously denied motion. A sanction for bringing a duplicate motion does not bear on the issue of willfulness. While such a sanction certainly bears on NSK's conduct in "pursuing protracted litigation and running of large fees to the detriment of its opponents," such conduct has been held to be irrelevant to issues of infringement. *Electro Med. Systems, SA v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1057 (Fed.Cir.1994). Therefore, this Court grants NSK's motion to exclude evidence of sanctions relating to the duplicate motion to bifurcate.

 NSK's overdesignation of documents as being for Attorneys Eyes Only is another matter. The conduct which was sanctioned was conduct intended by NSK to make it difficult or impossible for THK to discover documents that had been ruled discoverable. As pointed out by THK, NSK's bad faith designations of Attorneys Eyes Only had the effect of dramatically increasing the burden on the one attorney in the United States working on the case who could read Japanese and prevented him from discussing those documents with THK personnel. In short, it was a sophisticated way of hiding documents which documents may have indicated willful infringement. Hiding such documents is easily relevant to the issue of willful infringement. Therefore, in accordance with the caselaw cited above, this Court denies NSK's motion to bar evidence of the sanction of the Court as to the overdesignation of Attorneys Eyes Only to its documents.

NSK argues that informing the jury of these sanctions would so unfairly prejudice it

as to overwhelm all other evidence. This Court disagrees. All evidence brought by any party is designed, in one way or another, to prejudice the opponent's case. It is only unfair prejudice that concerns this Court. As stated above, caselaw authorizes admission of this evidence. However, no authority cited nor found by this Court authorizes or requires the jury to be informed of the dollar amount of the sanction imposed nor of the descriptive words used by Magistrate Judge Rosemond in assessing the sanction.[3] As true as the dollar amount of $96,140 is and as true as Magistrate Judge Rosemond's descriptive phrases are, communication of them is neither relevant to the issue of willfulness nor necessary for THK to make its point. All the jury need be told is exactly what the sanctioned activity was, the fact that the activity was disapproved by the Court and sanctioned by the Court, and that the jury may use these circumstances as evidence on the issue of willful infringement giving the evidence as much weight as the jury deems appropriate. In this manner, NSK's fears of overwhelming prejudice are substantially ameliorated.

The Court, therefore, grants NSK's third motion in part and denies it in part, all as above described.

**NSK's Fourth Motion *In Limine:* To exclude evidence of alleged lost profits in the period after the expiration of the '709 Patent.**

Among its damage claims is THK's claim for "accelerated market entry damages." This is a theory which demonstrates damages by the circumstance that NSK, as an infringer, obtained a competitive advantage from the fact that it participated in the market for many years and that, therefore, NSK will enjoy the benefits of its headstart by increased sales when it reenters the market after the expiration of the patent and after the expiration of any injunction issued by this Court against it. The '709 Patent expires in 1999.

■ That this theory of damages is well recognized by the courts is not seriously contested by NSK and this Court need not cite the extensive authority in its support. However, NSK contends that THK has stretched the application of the theory so far that it has entered the area of speculation. And, of course, lost profits "must not be speculative," although they may be estimated. *Brooktree Corp. v. Advanced Micro Devices, Inc.,* 977 F.2d 1555 (Fed.Cir.1992). The crux of NSK's argument is that if it is assumed that this case is tried in 1996 and an injunction entered against it which expires in 1999, it will have been out of the market for a period in excess of three years, so that the effects of the "headstart" would be gone. Furthermore, the picture of a market starting in 1999 is pure speculation because no person could predict the future competition, pricing, demand, and other economic factors so far in advance. This Court disagrees with NSK.

■ A theory of damages is speculative if it has no basis in fact—in short—an expert's guess. If there are any facts to support a theory, the fact-finder is at liberty to accept or reject the underlying fact and, by so doing, reject the damages. The facts necessary for this theory to apply are few: The theory assumes THK wins an injunction good until 1999—a fact within the contemplation of this lawsuit. It further assumes that NSK would be unable to develop a non-infringing product during the interim—a circumstance that may fairly be found since NSK has been unable, thus far, to do so. Finally, it assumes that NSK would reenter the market in 1999. Since the linear guides involved in this case constitute a major technological advance, one may fairly assume an involvement by NSK in the market. THK's theory of damages is founded on recognized facts and logical conclusions based on those facts, and thus, are not speculation. Instead, the theory provides a classic jury question. NSK's fourth's motion *in limine* is, therefore, denied.

**NSK's Fifth Motion *In Limine:* To exclude evidence and argument regarding International Trade Administration investigations of dumping in the bearing industry.**

■ Starting in the 1970's, the International Trade Administration commenced in-

---

**3.** Magistrate Judge Rosemond described NSK's conduct variously as "NSK's vexatious litigation tactics;" "unethical" and "preposterous."

vestigations concerning charges that foreign manufacturers, specifically including NSK, were selling certain products in the United States at less than fair market value. NSK was found guilty of numerous "dumping" violations in its sale of bearing products in the United States. THK seeks to introduce evidence of these violations in order to demonstrate that THK either lost sales as a result of the dumping or had to make sales at lower prices because of NSK's charging unfairly low prices.

THK's tender of this evidence is, however, undermined by the fact that linear guides, the devices in issue in this case, have never been involved in any dumping investigations and decisions. Thus, THK is unable to show any actual price difference as a result of dumping. THK counters that it ought to be able to show NSK's propensity to charge unfair low prices in the United States—a corporate disposition which caused THK to sell linear guides at lower prices in view of the contemplated unfair competition.

The problem with THK's position is that evidence of dumping of a few other products out of the many products sold by NSK, does not prove dumping of linear guides. In fact, THK admitted to the International Trade Administration that linear guides are not even within the "class or kind" of merchandise which was actually dumped. The evidence is simply not relevant.

Furthermore, the violations for which the United States government agencies imposed anti-dumping penalties occurred prior to the alleged infringement here and the more current allegations are, at this time, pending and undetermined.

For the above reasons, this Court grants NSK's fifth motion *in limine*. THK is, therefore, prohibited from bringing any evidence or argument regarding International Trade Administration investigations of dumping in the bearing industry.

**NSK's Sixth Motion *In Limine:* To exclude testimony of witnesses, Bjorge, Mackey and Pantuliano.**

NSK has moved for various reasons to exclude witnesses Mackey and Pantuliano who are included in THK's "will call" list of witnesses. THK has not argued these motions, but instead has indicated in its brief that it will not call these individuals. The Court, therefore, grants NSK's motion to exclude witnesses Mackey and Pantuliano.

NSK further moves to exclude testimony of THK witness Bjorge on the grounds that he is an expert who will testify on the same subject as expert witness, Sears, *i.e.*, the subject of "U.S. Patent Office procedures." NSK contends that using two experts on the same subject violates the Standing Order Establishing Pretrial Procedure in the Northern District which specifies that, "only one expert witness on each subject for each party will ordinarily be permitted." (fn. 8 to ¶ (e) of the Model Pretrial Order).

Where the testimony of one expert merely overlaps the testimony of another, this Court deems it unnecessary to bar one of them. In a case such as this, involving claims exceeding 140 million dollars, which has lasted over five years and has involved untold hours of lawyers' work and which may take five or more weeks to try, the Court believes that any doubts as to whether one or two experts should be employed should be resolved by allowing the additional expert. In these circumstances, the attorneys should be allowed to try their own cases.

In this case, there is clearly overlap between THK's two experts. THK intends to use witness Bjorge to testify early in the trial generally about patent office procedures, patents in general, patent claims, etc. Sears, on the other hand, will testify specifically about why he thinks NSK's infringement was willful, why there was no inequitable conduct and why the patents were not invalid. While both witnesses are experts on all of the topics, THK will use each for different subjects, although there will be overlap. Their use does not violate the Standing Order. NSK's motion is, therefore, denied.

THK, in its brief, suggests that, in the event the Court grants NSK's motion to bar one of its experts, it should also bar one of NSK's two damage experts, Lakshmanan and Langenfeld. Since this Court, by this Order, declined to bar one of THK's experts, it is not necessary to rule of THK's

conditional motion to bar. For the sake of completeness, however, the Court hereby denies THK's motion to bar since each of the challenged experts approached the damages issue from a different perspective— Lakshmanari from an accounting standing and Langenfeld from an economic standpoint. Although there will be considerable overlap and although one expert may comment and build upon the report of the other, the Standing Order does not mandate using one expert only under these circumstances. Any doubt is resolved in favor of allowing the additional expert.