**Affirmed as Modified; Opinion Filed March 13, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01037-CR

**FERNANDO ENRIQUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F11-70238**

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Lang

This is an appeal from a jury conviction for robbery. In two issues, Fernando Enriquez complains of the exclusion of evidence of a witness's prior theft convictions and the sufficiency of the evidence to support the trial court's assessment of $239 in court costs. As modified, we affirm the trial court's judgment.

### I. BACKGROUND

The robbery occurred on November 17, 2010 at around 10:15 p.m. in the parking lot of an apartment complex. Bernardo Badillo was in his car closing the door when he was robbed by two Hispanic men. One took Badillo's wallet and a "torn and taped" five dollar bill; the other took Badillo's car keys. The two men then fled in a "sporty" white SUV with "bumpers low to the ground." Enriquez, his girlfriend Julia Arce, and his cousin Jay Jay Vialobos were arrested later that evening after patrolling officers spotted them in the SUV.

At trial, Badillo described the robber who took the keys as "a little heavy and short." Badillo described the robber who took his wallet and five-dollar bill as "tall, slim" and Spanish-speaking. This robber had a bandana covering his face, was wearing a hooded sweatshirt with the hood over his head, and pointed what appeared to be a gun at Badillo. According to Badillo, the gun was hidden under a blanket. Badillo provided descriptions of the robbers and their car to the responding officer, but was unable to identify either robber from a photographic line-up he was subsequently shown at the police station. At "another [court] hearing," however, he identified Vialobos as the robber who took the keys.

Dallas police officer John Barton testified he was on patrol with officer Jason Amaro when he saw Enriquez driving an SUV that matched the description provided by Badillo. Barton began following Enriquez and stopped Enriquez after Enriquez turned without signaling. Amaro approached Enriquez, and Barton approached Arce and Vialobos. As he was walking toward the front of the SUV, Barton noticed what "appeared to be" a revolver, but was actually a BB gun, "laying on a blanket" in the "cargo area" of the SUV. Upon opening the passenger door, Barton also saw a black bandana beside Vialobos. A search by Barton of Arce's purse revealed Badillo's check-cashing card and a further search of the SUV revealed three "hoodies" and a stocking cap. A search of Enriquez by Amaro revealed a "torn $5 dollar bill taped with . . . Scotch tape" in Enriquez's left front pocket.

Testifying without any agreement from the State, Vialobos admitted he had a 1997 conviction for robbery and was on probation for forgery of a check, a state jail felony. He denied the robbery was planned and denied knowing Enriquez had a gun. Further, he admitted that he and Enriquez robbed Badillo, and he corroborated Badillo's account that Vialobos took the keys and Enriquez took the wallet and money. According to Vialobos, Enriquez wanted him to "take the blame" and asked him not to testify.

Testifying in his defense, Enriquez denied any involvement in the robbery. Enriquez explained he and Arce spent the evening together and were on their way to his father's house just before 10:00 p.m. when Vialobos called offering to pay for gas and "buy some beer" if Enriquez picked him up from a nearby tire shop "right now." Sensing some urgency in Vialobos's voice, Enriquez agreed. Vialobos was not at the tire shop when Enriquez arrived, but was spotted by Arce at "some apartments across the street." Enriquez drove to the apartments and noticed, as Vialobos got into the SUV, that Vialobos was wearing a "hoodie," had a bandana wrapped around his hand, and "was in a rush." Enriquez asked if Vialobos "ha[d] the gas money," and Vialobos replied that he did and displayed a bank card. Enriquez drove to two gas stations where Arce tried to pay with the card, but the card was declined both times. After the card was declined the second time, Vialobos gave Enriquez a five dollar bill. Moments later, Enriquez was stopped by the police. Enriquez testified that he was questioned about the robbery, but was not charged with the offense until the following February. Enriquez maintained his innocence and denied speaking any Spanish. He admitted, however, having a 2000 conviction for aggravated robbery and two prior convictions for domestic violence assault.

Enriquez's testimony about the occurrences the night of the robbery was generally corroborated by Arce, and his testimony that he did not speak Spanish was corroborated by three of his family members.

Instructed on the law of parties and that Vialobos was an accomplice and his testimony alone could not support a conviction, the jury returned a general verdict of guilty. Following Enriquez's plea of true to an enhancement paragraph alleging the prior aggravated robbery conviction and additional punishment evidence, the trial court sentenced Enriquez to forty years' imprisonment.

## II. EXCLUSION OF IMPEACHMENT EVIDENCE

In his first issue, Enriquez contends the trial court erred in refusing to allow him to impeach Vialobos's credibility with evidence of a 1991 felony theft conviction and evidence of a 1993 misdemeanor theft conviction. Enriquez asserts the exclusion was error because the probative value of the evidence outweighed its prejudicial effect.

### A. Standard of Review

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *Page v. State*, 213 S.W.3d 332, 337 (Tex. Crim. App. 2006). No abuse will be found if the ruling is reasonably supported by the record and it is correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

### B. Applicable Law

Rule 609 of the Texas Rules of Evidence allows a witness's credibility to be impeached by evidence of a felony conviction or conviction for a crime of moral turpitude, such as theft. *See* TEX. R. EVID. 609(a); *Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.-–Houston [1st Dist.] 2003, pet. ref'd). Where more than ten years have elapsed since the date of the conviction, evidence of the conviction is admissible only if the trial court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. *Id.* 609(b). The burden of demonstrating the admissibility of the evidence rests on the proponent. *Theus v. State*, 845 S.W.2d 874, 880 (Tex. 1992)

In conducting a rule 609(b) analysis and balancing the probative value against the prejudicial effect of a prior conviction of a witness other than a defendant, the court considers the following factors:

(1) the impeachment value of the prior offense;

(2) the passage of time between the prior conviction and the date the witness testifies;

(3) the similarity between the prior conviction and any conduct of the witness at issue in the present trial;

(4) the importance of the witness's testimony; and

(5) the importance of the credibility issue.

*See Moore v. State*, 143 S.W.3d 305, 312-13 (Tex. App.---Waco 2004, pet. ref'd) (citing *Daniels v. Loizzo*, 986 F.Supp. 245, 252 (S.D. N.Y. 1997); *THK Am., Inc. v. NSK, Ltd.*, 917 F.Supp. 563, 570 (N.D. Ill. 1996); *Theus*, 845 S.W.2d at 880; Jack B. Weinstein & Margaret A Berger, *Weinstein's Federal Evidence* vol. 4, ¶ 609.05[2], 609–33 (Joseph M. McLaughlin, ed., 2d ed., LEXIS 2001)); *Woodall v. State*, 77 S.W.3d 388, 396 (Tex. App.—Fort Worth 2002, pet. ref'd).

The first factor attaches higher impeachment value to a crime that involves deception or moral turpitude and, therefore, favors admission of evidence of a crime that "relates more to deception than not." *Theus*, 845 S.W.2d at 881. The second factor favors admission of evidence of a past crime if the past crime is recent and the witness has demonstrated a propensity for running afoul of the law. *Id.* If, however, the prior conviction and the conduct at issue are similar, the third factor will weigh against admission of the evidence to avoid the risk of the jury convicting based on a past pattern of conduct as opposed to the facts of the present case. *Id.* The fourth and fifth factors, which are considered together because they both depend on the nature of the defense and the means available to the defendant of proving that defense, also weigh against admission if other evidence or testimony corroborates the witness's testimony. *Theus*, 845 S.W.2d at 880-81; *Woodall*, 77 S.W.3d at 396.

### C. Application of Law to Facts

Enriquez's sole argument to the trial court that Vialobos's theft convictions were admissible rested on the second factor - Vialobos' propensity for running afoul of the law. We

question whether this was sufficient to preserve the issue for review. Although no question exists theft is a crime of moral turpitude, *see Rodriguez*, 129 S.W.3d at 559, other than the date and type of crime and Vialobos's propensity to run afoul of the law, Enriquez offered no specific facts or circumstances to justify the admission of evidence of the convictions. *See* TEX. R. APP. P. 33.2; *Tristan v. State*, 393 S.W.3d 806, 810 (Tex. App.-–Houston [1st Dist.] 2012, no pet.) ("A complaint that the trial court erred in excluding impeachment evidence may not be pursued on appeal unless the proponent perfected an offer of proof or a bill of exception."). Assuming, however, that Enriquez preserved this issue for our review, we conclude the trial court did not abuse its discretion in excluding evidence of the theft convictions.

Looking first at the second factor upon which Enriquez relied exclusively at trial, we note that not only is a showing of a tendency to commit crimes required, but temporal proximity must also be shown. *See Theus*, 845 S.W.2d at 881. Although Vialobos's convictions show a tendency to commit crimes, the convictions are remote. Enriquez's trial was had in May 2012. The convictions occurred in 1991 and 1993, twenty-one and nineteen years prior to trial. Relying on case law that predates the 1986 adoption of rules of evidence in criminal cases, Enriquez argues now on appeal that, although remote, the convictions prove lack of reformation and were therefore admissible. *See Milligan v. State*, 554 S.W.2d 192, 196 (Tex. Crim. App. 1977) (citing *McClendon v. State*, 509 S.W.2d 851, 855 (Tex. Crim. App. 1974) (op. on reh'g)). Neither rule 609 nor *Theus*, however, contemplate such a factor. *See Leyba v. State*, 416 S.W.3d 563, 567-68 (Tex. App.-–Houston [14th Dist.] 2013, pet. filed). Contrary to Enriquez's argument, we conclude this factor does not weigh in favor of admission of the convictions.

We also conclude that the fourth and fifth factors, the importance of Vialobos's testimony and his credibility, weigh against the admission of the complained-of evidence. Enriquez argues in his brief that Vialobos's testimony was "vital" to the State's case since Badillo could not

identify the robber who stole his wallet and money. And, since Vialobos was the only witness who identified Enriquez as the other robber, his credibility was a "key issue." However, Vialobos's testimony was not the only testimony linking Enriquez to the robbery. Badillo testified that he identified Vialobos as the robber who took the car keys. Although he was unable to identify Enriquez as the other robber, he described what the other robber was wearing and how the other robber concealed the gun. The arresting officer testified the items of clothing Badillo described and what "appeared to be" a gun "laying on a blanket" were found in an SUV that matched Badillo's description of the get-a-way car and that Enriquez was driving. Further, a search of Enriquez's pockets revealed a "torn and taped" five dollar bill similar to the one Badillo stated the other robber took from him. Vialobos's credibility, therefore, was not critical. Moreover, even if his credibility was as critical as Enriquez maintains, it was impeached by the admission of evidence of his 1997 robbery conviction and his probation for forgery of a check. We cannot agree with Enriquez's argument on appeal that evidence of the theft convictions should have been admitted based on the fourth and fifth factors.

Finally, we consider the third factor, the similarity between the prior convictions and Vialobos's role in the robbery of Badillo. Although theft is an element of robbery and theft is a crime of deception, robbery also involves bodily injury or the threat or use of violence. *See* TEX. PENAL CODE ANN. § 29.02(a) (West 2011); *Rodriguez*, 129 S.W.3d at 559. Enriquez argues in his brief that this additional element renders the two crimes dissimilar for purposes of a rule 609(b) analysis and, thus, evidence of the convictions should have been admitted. The State, on the other hand, argues that because the prior convictions and the robbery at hand all involved stealing, they are similar and evidence of the convictions was properly excluded. Whether theft and robbery are similar for purposes of a rule 609(b) analysis is a question on which courts of appeals have expressed differing positions and the court of criminal appeals has not answered.

–7–

*See Huerta v. State*, 359 S.W.3d 887, 894 n.1 (Tex. App.-–Houston [14th Dist.] 2012, no pet.). However, that in light of our conclusion that the second, fourth, and fifth factors weigh against the admissibility of evidence of Vialobos's theft convictions, any similarity between the two crimes would not persuade us to conclude the trial court erred in excluding the complained-of evidence. We resolve Enriquez's first issue against him.

### III. COURT COSTS

Enriquez's second issue respecting the assessment of costs stems from the lack of a bill of costs in the original clerk's record. Enriquez asserts that without a bill of costs the evidence is insufficient to support the costs assessed against him. The clerk's record, however, was supplemented after Enriquez filed his brief, and the supplemental record contains a bill of costs. Enriquez's complaint is now moot. *See Johnson v. State*, No. PD-0193-13, 2014 WL 714736, at *2 (Tex. Crim. App. Feb. 26, 2014); *Colonel v. State*, 416 S.W.3d 550, 555 (Tex. App.-–Dallas 2013, pet. ref'd). We resolve Enriquez's second issue against him.

### IV. MODIFICATION OF JUDGMENT

Although Enriquez pleaded true to the enhancement paragraph alleging the prior aggravated robbery conviction, the trial court entered "N/A" in the sections in which it should have indicated Enriquez's plea and the court's finding. Robbery is a second degree felony punishable by imprisonment for a term of not more than twenty years or less than two years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.33 (West 2011), 29.02(b). Because Enriquez pleaded true to the enhancement paragraph, and aggravated robbery is a felony, punishment was enhanced to that of a first degree felony---imprisonment for life or any term of not more than ninety-nine years or less than five years and a fine not to exceed $10,000. *Id.* §§ 12.32, 12.42(b), 29.03(b). The forty-year sentence Enriquez was assessed was outside the punishment range for a second degree felony, but within the punishment range for a first degree

felony. Accordingly, we conclude the trial court implied a finding of true to the enhancement paragraph. *See Torres v. State*, 391 S.W.3d 179, 184 (Tex. App.---Houston [1st Dist.] 2012, pet. ref'd). Further, because we have the necessary information to correct the judgment, we modify the judgment to reflect Enriquez's plea, and the trial court's implied finding, of true. *See id.*; *see also* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.---Dallas 1991, pet. ref'd).

## V. CONCLUSION

Having resolved Enriquez's complaints against him, we affirm the trial court's judgment as modified.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121037F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

FERNANDO ENRIQUEZ, Appellant

No. 05-12-01037-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-70238.
Opinion delivered by Justice Lang.   Justices
Moseley and Brown participating.

Based on the Court's opinion of this date, we **MODIFY** the judgment to reflect a "Plea to 1st Enhancement Paragraph" of "TRUE" and a "Finding[] on 1st Enhancement Paragraph" of "TRUE." As modified, we **AFFIRM** the trial court's judgment.

Judgment entered this 13th day of March, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE