Lee Tate Jr. v. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-239-CR

     LEE TATE, JR.,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 155th District Court
Waller County, Texas
Trial Court # 00-10-10,447
                                                                                                                

MEMORANDUM OPINION
                                                                                                                

     Lee Tate, Jr., appeals his conviction by the trial court, following his plea of not guilty, of the
offense of aggravated robbery. Subsequent to Tate’s plea of not true to an enhancement
paragraph, the trial court, finding the enhancement allegation true, assessed Tate’s punishment at
75 years in the Texas Department of Criminal Justice, Institutional Division. Tate retained
appellate counsel after his appointed counsel filed an Anders brief. He contends in three points
that the evidence is factually insufficient to support his conviction, that he was afforded ineffective
assistance of counsel at trial, and that the trial court erred in allowing the State to amend the
indictment without notice to him. We affirm.
      Tate urges in point one that the evidence is factually insufficient to sustain his conviction. In
reviewing a challenge to the factual sufficiency of the evidence, we begin with the assumption that
the evidence is legally sufficient. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App.
1997). We must view all the evidence without the prism of the "in the light most favorable to the
prosecution" construct. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We
ask "whether a neutral review of all the evidence, both for and against the finding, demonstrates
that the proof of guilt is so obviously weak as to undermine confidence in the [factfinder’s]
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof." Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see also Goodman
v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).
      We must also remain cognizant of the factfinder’s role and unique position—one that the
reviewing court is unable to occupy. Johnson, 23 S.W.3d at 9. The factfinder determines the
credibility of the witnesses and may "believe all, some, or none of the testimony." Chambers v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). It is the factfinder that accepts or rejects
reasonably equal competing theories of a case. Goodman, 66 S.W.3d at 287. A decision is not
manifestly unjust as to the accused merely because the factfinder resolved conflicting views of
evidence in favor of the State. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).
      James Griffin, the complainant, testified that early in the morning of January 8, 2000, he went
to an apartment complex with a friend. He indicated that he stayed in the car while his friend went
to talk to his girlfriend, but got out of the car after about fifteen minutes. He said he was accosted
by two men who wanted him to give them $5, but he did not have change. He related that he
started to go with the men to a store to get change, but declined to go when he did not feel safe. 
He identified Tate, whom he indicated that he had seen on prior occasions, as the man who tried
to pull his wallet out of his jacket.
      Griffin testified that after he told the men he did not have the money, they began hitting him
on the top of the head. He said that when he knocked on a window seeking help, one of the two
men hit him with something on the side of the head. He indicated that when he was hit on the side
of the head, the next thing he knew was that his arm went through the window and blood went
everywhere. He acknowledged that he did not know who pushed him through the window, but
did know it was one of the two men.
      Griffin testified that his artery was cut and he was sitting in a pool of blood when the police
arrived. He indicated that he was supposed to bleed to death within five minutes, and that it took
fifty-five minutes to stop the bleeding. He stated that he was left with no feeling between the top
of his forearm and the bottom of his wrist.
      Griffin said he picked Tate out of one of two books police showed him. He stated that the
book had about 300 pictures in it. After he identified Tate, Griffin testified that Tate no longer
had the same appearance at trial as he had in January 2000 because his hair was now longer. He
identified a picture as fairly and accurately depicting Tate as he appeared in January 2000. Griffin
acknowledged that he had a prior conviction for criminal mischief resulting from his torching
someone’s car and causing $1,938 worth of damage.
      Griffin insisted that he had previously seen Tate somewhere between two to four weeks prior
to the attack. He said Tate had told him that he had done time for murder “or whatever,” and that
he had done “six years or something.” Griffin denied that his visit to the apartment had anything
to do with crack cocaine. Griffin indicated that he had no doubt that Tate was one of his
assailants.
      James Thornton, a sheriff’s deputy from Waller County, testified that when he responded to
a call in the early morning hours of January 8, 2000, he found Griffin with blood spurting out of
his arm. He said Griffin told him that an unknown black male had pushed him into a window. 
Thornton indicated that there was a pool of blood around Griffin. He related that Griffin had
blood on his pants and his shirt was saturated with blood.
      Lee Tate testified that he had never seen Griffin prior to his testifying and that he, Tate, had
never been to prison for murder. He said that during the time period of the attack he was staying
in Harris County with his aunt and did not come back until late January. Tate denied ever having
been to the apartments where the attack occurred. He indicated that his hair would have been
much longer on January 8, 2000, than was indicated in the picture previously identified by Griffin. 
He insisted that he had family members who could describe his hairstyle in January 2000 and lots
of photographs that show his hair. Tate acknowledged that he had previously been convicted of
robbery, misdemeanor theft (twice), burglary of a motor vehicle, misdemeanor theft of service,
unauthorized use of a motor vehicle, and two felony counts of delivery of a controlled substance. 
Tate later acknowledged that the photo previously identified reflected how he looked at the end
of January 2000. Tate finally stated that he could not really say how long his hair was on January
8, but that he cut his hair off when it was hot and let it grow when it was cold.
      Emmitt Coburn, the chief jailer of the Waller County Sheriff’s Department, identified a copy
of the picture that was previously identified as the picture taken when Tate was booked into the
Waller County jail on January 31, 2000.
      Tate contends that Griffin’s testimony was contradictory, that he testified he had been out at
a club and could possibly have been intoxicated or high on drugs, and that he never testified he
was pushed through a window. While Tate states that Griffin’s testimony was contradictory, he
does not say in what way it was contradictory. He asserts that Griffin testified he had been out
at a club and could possibly have been intoxicated or high on drugs, but there is no record
reference to such testimony, and in fact there was no such testimony. To the contrary, Griffin
testified that he had not been drinking on the night in question and that his visit to the apartments
had nothing to do with drugs. While Griffin did not say he was pushed through the window when
he spoke of being hit on the head and his arm going through the window, the factfinder could
reasonably have determined from that testimony that he was pushed through the window. Further,
Griffin later testified that he did not know who pushed him through the window. Also, the
investigating officer testified Griffin told him at the scene that he had been pushed through the
window. We hold that the evidence is factually sufficient to support Tate’s conviction. We
overrule point one.
      Tate contends in point three that the trial court erred by allowing the State to amend the
indictment without notice to him. Our record does not reflect any amendment to the indictment,
only that the prosecutor misread it in court. Tate made no objection to the misreading of the
indictment, nor has he shown how his substantial rights were affected. We hold that he waived
any objection to the misreading of the indictment and that, in any event, the misreading of the
indictment did not affect his substantial rights. Tex. R. App. P. 33.1(a) and 44.2(b). We overrule
point three.
      Tate contends in point two that he was denied the effective assistance of counsel at trial. We
apply a two-pronged test to ineffective assistance of counsel claims. Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). First, appellant must show that his counsel’s performance was deficient;
second, appellant must show the deficient performance prejudiced the defense. Strickland, 466
U.S. at 687, 104 S. Ct. at 2064.
      In evaluating the effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case. Thompson, 9 S.W.3d at 813. A
defendant must demonstrate that counsel’s representation fell below an objective standard of
reasonableness and prevailing professional norms at the time of the alleged error. Wiggins v.
Smith, ___U.S.___, ___, 123 S. Ct. 2527, 2535, 156 L. Ed. 2d ___, ___ (2003); Strickland, 466
U.S. at 688-89, 104 S. Ct. at 2065. “[C]ounsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of reasonable professional judgment.” 
Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. An allegation of ineffective assistance must be
firmly founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson, 9 S.W.3d at 814. Our scrutiny of counsel’s performance must be
highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.
      The second prong of Strickland requires a showing that counsel’s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. Id. at 686-87, 104
S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for
counsel’s unprofessional errors, the result of the proceeding would have been different. Id. at
694; 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine
confidence in the outcome. Id. The ultimate focus of our inquiry must be on the fundamental
fairness of the proceeding whose result is being challenged. Id. at 697, 104 S. Ct. at 2070.
      Under normal circumstances, the record on direct appeal will not be sufficient to show that
counsel’s representation was so deficient and so lacking in tactical or strategic decision-making
as to overcome the presumption that counsel’s conduct was reasonable and professional, and the
trial record rarely contains sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).
      Tate asserts that his counsel was ineffective in the following ways: 1. persuading Tate to
waive a jury trial because counsel was not prepared for the trial setting; 2. failing to file a motion
for discovery, a motion to suppress the complainant’s in-court identification of Tate, a motion in
limine relating to Tate’s prior criminal history, and a motion for the State to give notice of intent
to use extraneous offenses at trial; 3. failing to present any mitigating evidence during the
punishment hearing; 4. failing to call any witnesses on behalf of Tate at either the guilt-innocence
stage or the punishment stage of the trial; and 5. failing to object to an amendment of the
indictment.
      Tate suggests that his counsel was unprepared for trial, but there is nothing in the record to
indicate any such lack of preparedness. Tate urges that the filing of a handwritten waiver and the
failure to file numerous motions shows that his counsel was unprepared. None of these, either
individually or as a whole, shows that Tate’s counsel was not prepared for trial. Tate fails to
indicate any specific witness his counsel could have called, but did not, and what the witness’s
testimony would have been. He also fails to indicate what mitigating evidence his counsel might
have presented.
      With respect to the numerous motions Tate states that his attorney should have filed, he has
made no showing as to anything that could have been discovered, but was not, that would have
affected the outcome of the trial, nor does he suggest any basis for a legal challenge to Griffin’s
in-court identification, nor any legal basis that would prevent the State from cross-examining him
regarding his past criminal conduct. Nothing in the record shows any surprise at the State using
his past criminal record to impeach him at trial. We also note that the record reflects, at best, a
misreading of the indictment by the prosecutor, not a formal amendment to the indictment. There
is nothing to show that the result of the proceeding would have been different had the indictment
been read correctly.
      In urging that his counsel was ineffective, Tate relies on three cases: Ex parte Dunham, 650
S.W.2d 825 (Tex. Crim. App. 1983); Hernandez v. State, 943 S.W.2d 930 (Tex. App.—El Paso
1997), rev’d, 988 S.W.2d 770 (Tex. Crim. App. 1999); and Butler v. State, 716 S.W.2d 48 (Tex.
Crim. App. 1986). We find that all three cases are distinguishable. In Dunham, evidence at a
habeas corpus hearing showed that, at the time of trial, defense counsel was both mentally and
physically exhausted from several criminal jury trials and therefore persuaded the defendant to
waive his right to a jury trial so that counsel would not have to prepare for the voir dire of a jury. 
Dunham, 650 S.W.2d at 826. Counsel acknowledged that he knew this course of action was not
advantageous to the defendant and that it was bad legal advice. Id. Additionally, the evidence
showed that counsel had done little preparation for trial. Id. at 827. In the case at bar there is no
evidence that counsel was mentally or physically exhausted and no evidence that counsel had done
little trial preparation.
      In Hernandez, evidence presented at a hearing on the defendant’s motion for new trial showed
that trial counsel met with the defendant for the first time on the day before trial and “tried the
case blind.” Hernandez, 943 S.W.2d at 934-35. In the case at bar there is no indication that
counsel met with Tate for the first time the day before trial or that counsel “tried the case blind.”
      In Butler, evidence at the hearing on the defendant’s motion for new trial showed that counsel
did not seek out or interview any potential witness, thereby depriving him of two witnesses who
would have challenged the victim’s eyewitness identification of the defendant and at least one alibi
witness. Butler, 716 S.W.2d at 55-56. Tate suggests that family members were available to
testify concerning his identification or perhaps as to alibi, but he has not identified any particular
family member whom his counsel should have called and therefore not shown what that witness’s
testimony would have been. In Butler, the witnesses whom counsel failed to call testified at the
hearing on the motion for new trial, either testifying that the defendant was not the person who
left the scene immediately after the robbery or that he was somewhere else at the time. Id. at 56. 
We hold that Tate failed to show that he was denied effective assistance of counsel. We overrule
point two.
      The judgment is affirmed.

                                                                   JOHN G. HILL
                                                                   Senior Justice

Before Chief Justice Davis,
      Justice Gray, and
      Senior Justice Hill (Sitting by Assignment)
Affirmed
Opinion delivered and filed August 4, 2003
Do not publish
[CRPM]      



serif">      Moore contends in his seventh issue that the trial court should have required the State to
elect whether it intended to prosecute him for assault or retaliation because both counts alleged
assaults on a public servant and because these offenses are in pari materia.
      Moore did not argue in the motion to elect or in the hearing on that motion that these
offenses are in pari materia. Accordingly, he has failed to preserve this aspect of his seventh
issue for our review. See Tex. R. App. P. 33.1(a)(1).
      An election is required when an indictment alleges the commission of a single offense but
the State offers evidence at trial that the accused committed the offense alleged more than once. 
See Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); Brantley v. State, 48
S.W.3d 318, 322 n.1 (Tex. App.—Waco 2001, pet. ref’d). Here, the indictment alleges two
separate offenses, and the State offered evidence that Moore committed the two offenses
alleged. Thus, no election was required.
      Accordingly, Moore’s seventh issue is overruled.
IMPEACHMENT EVIDENCE
      Moore’s first and third issues concern Hauerland’s three prior misdemeanor convictions: a
1987 theft conviction; a 1988 theft conviction; and a 1989 DWI conviction. Marvin contends
in his third issue that the court abused its discretion by refusing to permit him to impeach
Hauerland with the prior theft


 convictions. He contends in his first issue that the court abused
its discretion by refusing to permit him to ask witnesses called to vouch for Hauerland’s
truthful character whether they were aware of the three prior convictions.
Impeachment with Convictions More Than Ten Years’ Old
      Because the convictions were more than ten years’ old, they were admissible for
impeachment purposes only if their probative value substantially outweighed their prejudicial
effect. Tex. R. Evid. 609(b). The Court of Criminal Appeals has looked to federal cases to
determine what factors should be considered in balancing probative value against prejudicial
effect when the witness sought to be impeached is the defendant. Theus v. State, 845 S.W.2d
874, 880 (Tex. Crim. App. 1992) (citing U.S. v. Mahone, 537 F.2d 922, 929 (7th Cir. 1976)).
      Those factors include: (1) the impeachment value of the prior crime, (2) the temporal
proximity of the prior crime relative to the charged offense and the witness’s subsequent
history, (3) the similarity between the past crime and the offense being prosecuted, (4) the
importance of the defendant’s testimony, and (5) the importance of the credibility issue. Id.
      With the exception of the second and third factors, these factors can be applied in the same
manner when the witness sought to be impeached is someone other than the defendant. We
look to the federal authorities to see how the second and third factors are treated in such a
case. Cf. id.
      The second factor is modified only slightly by the federal cases. That factor examines the
temporal proximity of the prior conviction to the date the witness testifies and the witness’s
subsequent history. See Daniels v. Loizzo, 986 F. Supp. 245, 252 (S.D.N.Y. 1997); THK
Am., Inc. v. NSK, Ltd., 917 F. Supp. 563, 570 (N.D. Ill. 1996); Jack B. Weinstein &
Margaret A Berger, Weinstein’s Federal Evidence vol. 4, ¶ 609.05[2], 609–33 (Joseph M.
McLaughlin, ed., 2d ed., LEXIS 2001).
      The third factor as modified examines the similarity between the past crime and any
conduct of the witness at issue in the present trial. See THK Am., 917 F. Supp. at 570;
Weinstein & Berger, Weinstein’s Federal Evidence vol. 4 at ¶ 609.05[2], 609–33.
      Applying these factors to Moore’s case, the prior theft convictions do have strong
impeachment value. The fact that Hauerland has had no further difficulties with the law weigh
against their admission. The third factor focuses on the potential for unfair prejudice due to
similarity of past conduct with the conduct at issue in the present litigation. The absence of
similarities between Hauerland’s theft convictions and his conduct on the occasion in question
indicates no significant danger of unfair prejudice on this basis. Hauerland’s testimony was
important to the State’s case but not essential because other witnesses corroborated much of his
testimony. For the same reason, Hauerland’s credibility was important but not a critical issue
at trial due to the presence of other witnesses who provided similar testimony.
      Accordingly, two of these factors indicate that Moore’s prior theft convictions have
probative value, but the other three tend to diminish the probative value of the convictions. 
Therefore, it cannot be said that the probative value of the convictions substantially outweighs
the danger of unfair prejudice. For this reason, we conclude that the court did not abuse its
discretion by refusing to permit Moore to impeach Hauerland with the prior convictions. 
Thus, we overrule Moore’s third issue.
 

Cross-Examination of Character Witnesses
      In rebuttal, the State called three character witnesses who testified that in their opinion
Hauerland had a good reputation for truthfulness. Moore sought to ask these witnesses
whether they had heard that Hauerland had the two prior theft convictions and the prior DWI
conviction at issue. The State objected that probative value of this line of questioning was
substantially outweighed by danger of unfair prejudice, confusion of issues, and misleading the
jury under Rule 403. We agree with the State on this issue.
      We review decisions to admit or exclude evidence under an abuse-of-discretion standard. 
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). We will not reverse a ruling
which lies within “the zone of reasonable disagreement.” Id.
      A witness who testifies to another’s good character may be cross-examined to test the
witness’s awareness of relevant specific instances of conduct. Tex. R. Evid. 405(a); Wilson v.
State, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002). This right of cross-examination has two
limitations: (1) the prior instances must be relevant to a character trait at issue; and (2) the
prior instances must have a basis in fact. Wilson, 71 S.W.3d at 350. We agree with the
State’s contention that this right of cross-examination is also limited by Rule 403. See Mozon
v. State, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999) (evidence admissible under Rule 404
may still be excluded under Rule 403); see also McCoy v. State, 10 S.W.3d 50, 53 (Tex.
App.—Amarillo 1999, no pet.) (“Rule 405 merely delineates the manner by which admissible
character or character trait evidence may be proven.”).
      It is undisputed that Moore established a factual basis for the prior convictions. Thus, we
limit our analysis to the issue of whether the prior convictions are relevant to Hauerland’s
truthful character and if so whether the probative value of the convictions is substantially
outweighed by the danger of unfair prejudice or one of the other considerations enumerated in
Rule 403.
      The prior DWI conviction is not relevant to Hauerland’s truthful character because it is
not a conviction for a crime involving moral turpitude. See Shipman v. State, 604 S.W.2d
182, 184 (Tex. Crim. App. [Panel Op.] 1980); Lopez v. State, 990 S.W.2d 770, 778 (Tex.
App.—Austin 1999, no pet.); see also Perez v. State, 11 S.W.3d 218, 221 (Tex. Crim. App.
2000) (felony DWI not a “high crime” under art. XVI, § 2 of Tex. Const. because it does not
involve “moral corruption” or “dishonesty”). Thus, the court did not abuse its discretion by
refusing to permit Moore to cross-examine the State’s character witnesses about the DWI
conviction.
      Conversely, the theft convictions are relevant to Hauerland’s truthful character because
they are convictions for crimes involving moral turpitude. Bowden v. State, 628 S.W.2d 782,
788 (Tex. Crim. App. 1982); Morris v. State, 67 S.W.3d 257, 263 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d). However, evidence of those convictions may be excluded if their
probative value is substantially outweighed by the danger of unfair prejudice. See Mozon, 991
S.W.2d at 846; Tex. R. Evid. 403.
      In conducting a Rule 403 analysis, we examine: (1) how compellingly the challenged
evidence serves to make a fact of consequence more or less probable; (2) the potential the
challenged evidence has to impress the jury “in some irrational but nevertheless indelible
way”; (3) the time the proponent will need to develop the evidence; and (4) the force of the
proponent’s need for the evidence, i.e., does the proponent have other probative evidence
available to him to help establish the fact of consequence. Manning v. State, 114 S.W.3d 922,
926 (Tex. Crim. App. 2003); Mozon, 991 S.W.2d at 847.
      The fact of consequence at issue here is Hauerland’s character for truthfulness. Because
the theft convictions are more than ten years’ old, they do not compellingly establish that his
truthful character is bad. Cf. Tex. R. Evid. 609(b); see also Theus, 845 S.W.2d at 881 (prior
conviction more probative as impeachment evidence “if the past crime is recent and if the
witness has demonstrated a propensity for running afoul of the law”).
      The remoteness of the prior convictions also tends to diminish any potential they may have
for impressing the jury in some improper manner. Moore would require very little time to
question the witnesses about their familiarity with Hauerland’s prior theft convictions. Moore
called other witnesses who testified that Hauerland’s character for truthfulness was not good. 
Thus, his need to cross-examine the State’s witnesses regarding Hauerland’s prior convictions
was lessened.
      Because these factors weigh equally in favor of and against permitting cross-examination
regarding the prior convictions and because Rule 609(b) authorized the exclusion of the
convictions for impeachment of Hauerland while he was on the stand, we cannot say that the
court abused its discretion by refusing to allow the cross-examination. Accordingly, we
overrule Moore’s first issue.MOORE’S CHARACTER WITNESSES
      Moore contends in his second issue that the court abused its discretion by refusing to
permit him to present witnesses to testify about his character for truthfulness. Because the
State did not attack Moore’s character for truthfulness, no abuse of discretion is shown.
      Rule 608(a)(2) provides that evidence of a witness’s truthful character is admissible if the
witness’s truthful character has been attacked. Moore contends that his truthful character was
attacked by the State’s “vigorous” cross-examination.
      Unless the State’s cross-examination of a defendant directly implicates the defendant’s
character for truthfulness, cross-examination exposing inconsistencies between the defendant’s
testimony and the State’s evidence does not constitute an attack on the defendant’s truthful
character under Rule 608(a)(2). Stitt v. State, 102 S.W.3d 845, 848-49 (Tex. App.—
Texarkana 2003, pet. ref’d); Spector v. State, 746 S.W.2d 946, 950-51 (Tex. App.—Austin
1988, pet. ref’d).
      Here, the State’s cross-examination did nothing more than illuminate the inconsistencies
between Moore’s version of the events and the State’s. This does not constitute an attack on
Moore’s character for truthfulness. Id. Thus, no abuse of discretion is shown. Accordingly,
we overrule Moore’s second issue.
REQUESTED JURY INSTRUCTIONS
      Moore contends in his fifth issue that the court erred by overruling his requested jury
instructions on the duty to report child abuse or neglect and the confidentiality of information
obtained in the course of an investigation of suspected abuse or neglect. He contends in his
eighth issue that the court erred by refusing to charge the jury on assault by threat as a lesser-included offense of retaliation.
 

Duty to Report Abuse or Neglect and Confidentiality of Information
      The trial court denied Moore’s request to instruct the jury regarding the duty to report
suspected child abuse or neglect


 and the confidentiality of information obtained in an
investigation of suspected abuse or neglect as provided by statute.


 It appears that Moore
sought these instructions to support his contention that Hauerland could not lawfully require
Karen to release her counseling records to him and thus was not acting as a public servant on
the occasion in question. Because the requested instructions served only to negate the public
servant element of the retaliation charge, the trial court was not required to submit them.
      “[A] defensive instruction is not required when the issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the State’s case.” Ortiz v. State,
93 S.W.3d 79, 92 (Tex. Crim. App. 2002), cert. denied, 538 U.S. 998, 123 S. Ct. 1901, 155
L. Ed. 2d 824 (2003). The requested instructions do not implicate statutory defenses or
affirmative defenses. Rather, they would serve only to negate the public servant element of the
offense of retaliation. Thus, the trial court did not err in refusing the instructions. 
Accordingly, we overrule Moore’s fifth issue.
Instruction on Lesser-Included Offense
      The trial court likewise denied Moore’s request for an instruction on assault by threat as a
lesser-included offense of retaliation. An offense is a lesser-included offense if:
(1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;
 
(2) it differs from the offense charged only in the respect that a less
serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission;
 
(3) it differs from the offense charged only in the respect that a less
culpable mental state suffices to establish its commission; or
 
(4) it consists of an attempt to commit the offense charged or an
otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981).
      Assault by threat is not a lesser-included offense of retaliation under article 37.09(1)
because assault by threat requires a threat intended to place the victim in fear of imminent
harm, whereas retaliation does not require a threat of imminent harm. Helleson v. State, 5
S.W.3d 393, 396 (Tex. App.—Fort Worth 1999, pet. ref’d).
      Moore contends that assault by threat is a lesser-included offense under article 37.09(2)
because, without the allegation that Hauerland was a public servant, which Moore disputes, the
resulting conduct poses “a less serious threat to the same person.” We reject this contention
on its face. The issue of whether Hauerland was acting as a public servant on the occasion in
question has no effect on the seriousness of the threat Moore made to him. Stated another
way, the threat was the same regardless of Hauerland’s status. Accordingly, we overrule
Moore’s eighth issue.
FAILURE TO DISCLOSE BRADY


 EVIDENCE
      Moore contends in his ninth issue that the trial court abused its discretion by denying his
motion for mistrial due to the State’s failure to disclose before trial that one of its witnesses
had been indicted for burglary in 1991. The State responds that Moore did not preserve this
contention for appellate review because he failed to request a continuance when the evidence
first came to light at trial. Because preservation “is a systemic requirement that a first-level
appellate court should ordinarily review on its own motion,” we will begin with the State’s
contention that Moore did not preserve this issue for our review. See Jones v. State, 942
S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997).
      A plurality of this Court has suggested that “Brady claims should fall under Marin’s



category one and need not be ‘preserved’ for appellate review.” Keeter v. State, 105 S.W.3d
137, 144 (Tex. App.—Waco 2003, pet. granted) (plurality) (footnote added). On further
consideration, we conclude that a defendant’s right to the disclosure of exculpatory evidence
under Brady is a category two right in the Marin formulation because this right can be waived
but must be implemented even if not requested.
      In Marin, the Court of Criminal Appeals identified three categories of rights possessed by
criminal defendants: (1) absolute requirements and prohibitions which cannot be waived or
forfeited; (2) rights which must be implemented unless expressly waived; and (3) rights which
will be implemented only upon request. 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993);
accord Sanchez v. State, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003). Only rights in the
third category must be “preserved” for appellate review. Marin, 851 S.W.2d at 279; accord
Sanchez, 120 S.W.3d at 366-67.
      The Supreme Court of the United States has held that a defendant who pleads guilty can
waive his right to Brady evidence. See U.S. v. Ruiz, 536 U.S. 622, 628-33, 122 S. Ct. 2450,
153 L. Ed. 2d 586 (2002). Thus, a defendant’s rights under Brady are “waivable.” However,
that Court has also held that Brady evidence must be provided to the defense, even if not
requested. Strickler v. Greene, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286
(1999); U.S. v. Agurs, 427 U.S. 97, 103-07, 96 S. Ct. 2392, 59 L. Ed. 2d 342 (1976). Given
these two components of the Supreme Court’s Brady jurisprudence, we conclude that a
defendant’s right to exculpatory evidence under Brady is a category two right in the Marin
formulation. Therefore, a Brady claim need not be preserved for appellate review. Marin,
851 S.W.2d at 279; accord Sanchez, 120 S.W.3d at 366-67.
      True, Texas courts, including this one, have previously held Brady claims procedurally
defaulted because of the defendants’ failure to request a continuance. E.g., Wilson v. State, 7
S.W.3d 136, 146 (Tex. Crim. App. 1999); Taylor v. State, 93 S.W.3d 487, 502 (Tex.
App.—Texarkana 2002, pet. ref’d); Yates v. State, 941 S.W.2d 357, 364 (Tex. App.—Waco
1997, pet. ref’d). However, it does not appear that any of these decisions considered this issue
under Marin. When we examine the Supreme Court’s Brady jurisprudence in light of the
preservation requirements established by Marin (which have been recently reaffirmed by the
Court of Criminal Appeals), we must conclude as stated that a defendant’s rights under Brady
fall within category two under Marin. Accordingly, we review the merits of Moore’s Brady
claim.
      A Brady violation occurs when the State fails to disclose exculpatory information
“unknown to the defense.” Hayes v. State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002)
(quoting Agurs, 427 U.S. at 103). Here, Moore’s counsel informed the trial court that he had
discovered by his own investigation that the witness in question had been previously indicted. 
Because Moore was aware of the information which he contends the State improperly failed to
disclose, no Brady violation is shown. Id. Accordingly, we overrule Moore’s ninth issue.
      We affirm the judgment.
 
                                                                         FELIPE REYNA
                                                                         Justice
Before Chief Justice Gray,
      Justice Vance, and 
      Justice Reyna



      (Chief Justice Gray concurring and dissenting)
Affirmed
Opinion delivered and filed July 21, 2004
Publish
[CR25]